Gordon Martin Spirer, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Submitted on briefs May 5, 1980, to Judges MENCER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

382

*Thomas R. Ceraso*, for appellant.

*Harold H. Cramer*, Assistant Attorney General, with him *Ward T. Williams*, Chief Counsel of Transportation, and *Edward G. Biester, Jr.*, Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 26, 1980:

This is an appeal of Gordon Martin Spirer from an order of the Court of Common Pleas of Westmoreland County upholding the suspension of his driving privilege by the Department of Transportation, Bureau of Traffic Safety, under Section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1), for his refusal to submit to a chemical test (breathalyzer test).

Spirer was arrested on November 18, 1978 by the North Huntingdon Township Police Department for driving a vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving, in violation of Section 3731(a)(1) of the Vehicle Code, 75 Pa. C.S. §3731(a)(1).

Spirer raises two questions on this appeal.

I.

Did the lower court err in determining that the actions of Spirer were such that he refused to take a breathalyzer test?

The lower court made, *inter alia*, the following findings of fact:

4. The defendant was advised by the North Huntingdon Township Police Officers, Holman and Brown, that failure to take the test would result in a suspension of the defendant's operating privileges.

5. The defendant was told to blow into the mouthpiece of the machine by Officer Holman. Instead of blowing into the mouthpiece, defendant blew at the mouthpiece while he held it away from his mouth.

6. Officers Holman and Brown then explained to the defendant that he would have to blow into the mouthpiece. Defendant responded by again blowing at the mouthpiece, holding it approximately six inches away from his mouth.

7. Officer Holman then took another mouthpiece and demonstrated how the defendant was to blow into the mouthpiece. Defendant again responded by blowing at it.

8. The defendant continued this conduct of blowing at the mouthpiece while holding it away from his mouth, in spite of the instructions to the contrary by the officers, from four to six times.

9. The defendant was not physically incapacitated to place the mouthpiece into his mouth.

10. The defendant was unruly, uncooperative, verbally abusive toward the officers throughout the testing procedures, and on two occasions had to be physically restrained by the officers. The defendant threw the mouthpiece against the machine on one occasion.

Based on these findings, the lower court reasoned that, as a conclusion of law, Spirer was physically capable of properly taking the breathalyzer test and his attempts to blow at the mouthpiece while holding it six inches away from his mouth, after being advised how to properly take the test, constituted a deliberate and willful refusal to take the breathalyzer test.

Our duty is to examine the testimony to determine whether the findings of the court are supported by competent evidence and to correct conclusions of law erroneously made. *Commonwealth v. Passarella*, 7 Pa. Commonwealth Ct. 584, 300 A.2d 844 (1973). The refusal to submit to a breathalyzer test is a factual, not a legal, determination. *Commonwealth v. Miles*, 8 Pa. Commonwealth Ct. 544, 304 A.2d 704 (1973). It is the function of the lower court to decide on the credibility of the witnesses and reconcile conflicts in the evidence. *Commonwealth v. Stamoolis*, 6 Pa. Commonwealth Ct. 617, 297 A.2d 532 (1972).

We must conclude, on this record, that the evidence presented does support the findings of fact made by the lower court, which findings support the conclusion of law reached by the lower court.

We have held that the failure to supply sufficient breath for a breathalyzer test to be conducted constitutes a refusal to take the test. *Department of Transportation, Bureau of Traffic Safety v. Jones*, 38 Pa. Commonwealth Ct. 400, 395 A.2d 592 (1978); *Department of Transportation, Bureau of Traffic Safety v. Medalis*, 24 Pa. Commonwealth Ct. 12, 354 A.2d 43 (1976); *Department of Transportation, Bureau of Traffic Safety v. Kelly*, 18 Pa. Commonwealth Ct. 490, 335 A.2d 882 (1975). In these cases, the defendants failed to meet their burden of proving by competent evidence that they were physically unable to submit to the breathalyzer test so as to excuse their refusals to take the test. Here it is Spirer's contention that,

although he was physically able to take the breathalyzer test, the machine was not operating properly and the officers failed to determine whether it was in fact working correctly. This contention, when considered against a finding of fact that Spirer blew at the mouthpiece of the breathalyzer machine while holding it approximately six inches away from his mouth, is patently without merit.

Since Spirer's so-called attempts did not support even an indication of machine malfunction, there was no reason on this record for the officers to examine the equipment for malfunction. Spirer's contention in this regard would be as logically sound as a contention that a motor vehicle needs mechanical attention because its motor will not start when the ignition key is turned while being held approximately six inches from the ignition cylinder.

## II.

Should the suspension of Spirer's operating privilege be set aside because of a noncompliance with the provisions of Section 1547(b)(2) of the Vehicle Code?

Section 1547(b)(2) of the Vehicle Code, 75 Pa. C.S. §1547(b)(2), states: "It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended or revoked upon refusal to submit to a chemical test." In *Peppelman v. Commonwealth*, 44 Pa. Commonwealth Ct. 262, 403 A.2d 1041 (1979), we held that a suspension of driving privilege for refusing to submit to a breathalyzer test was not proper where a police officer advised the driver that his operating privilege could be suspended upon his refusal to submit to the test rathther than advising the driver that his privilege would be suspended upon such refusal.

386

However, in the instant case, the fact-finding court found that Spirer "was advised by the North Huntingdon Township Police Officers, Holman and Brown, that failure to take the [breathalyzer] test would result in a suspension of [Spirer's] operating privileges." Support for this finding is found in the record where Spirer's father, who was present at the police station during the time period in question, testified that his son was advised that if he didn't take the test his driving privileges would be suspended. Accordingly, we must conclude that the finding of the lower court, supported by competent evidence, on the matter of notice to Spirer as to the consequence of his refusing to submit to the breathalyzer test, satisfied both the requirement of Section 1547(b)(2) of the Vehicle Code and our holding in *Peppelman*.

Order affirmed.

ORDER

AND Now, this 26th day of June, 1980, the order of the Court of Common Pleas of Westmoreland County, dated May 31, 1979, upholding the Department of Transportation, Bureau of Traffic Safety's suspension of the operating privilege of Gordon Martin Spirer for a period of six months, is hereby affirmed.