540 A.2d 349

Calvin E. Matthews, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Submitted on briefs March 24, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Albert C. Odermatt, Jr.,* with him, *Charles E. Foerster, Weisel, Xides & Odermatt,* for appellant.

*Harold H. Cramer,* Assistant Counsel, with him, *John L. Heaton,* Chief Counsel, for appellee.

OPINION BY SENIOR JUDGE BARBIERI, April 21, 1988:

Calvin E. Matthews (Appellant) appeals the order of the Court of Common Pleas of Allegheny County which affirmed the suspension of his operating privileges for a period of one year for refusal to submit to chemical testing pursuant to Section 1547(b) of the Vehicle Code, 75 Pa. C. S. §1547(b). We affirm.

On January 31, 1986, a City of Pittsburgh police officer drove up behind Appellant who was sitting in a stopped car in the middle of the street blocking traffic at 5:20 a.m. Appellant ignored the siren and flashing lights of the officer's police car. The police officer then got out of the car, knocked on Appellant's car window,

and told Appellant to move his car. Appellant at first refused to talk to the officer and then began screaming that he was being harassed. Appellant then put his car into gear and drove away at sixty miles per hour. Appellant's car was overhauled after a two block chase and after a struggle with police he was placed under arrest for driving under the influence.

Appellant was taken to police headquarters and given the required warnings. He performed three field sobriety tests and submitted to two breathalyzer tests, each of which registered zero. The police officer testified that Appellant acted in a bizarre manner, alternately pacing up and down the room and screaming at the police, and then passively cooperating with them. The police officer smelled no alcohol on Appellant's breath but noted that his eyes were glassy and at times he was unsteady on his feet and combative. Once Appellant admitted he was on medication, the police officer decided to take Appellant to the hospital for a blood test. At the hospital, a nurse asked Appellant his name for a consent form the hospital needed in order to draw blood. Appellant refused to give the nurse his name and when the police officer said it was Calvin Matthews, Appellant started screaming that he was an imposter and was being framed. He was then forcibly removed from the hospital.

At the hearing before the trial court, Appellant's treating psychiatrist testified that Appellant was a chronic paranoid schizophrenic who under stress feels he is being harassed and taken advantage of and therefore becomes uncooperative and fearful. The psychiatrist stated that this condition rendered Appellant incapable of either signing the consent form or submitting to blood testing. The trial court disagreed, finding that Appellant's testimony lacked credibility, and that he had not only by his conduct refused to submit to the

requested blood test, but also refused to cooperate with the initial breathalyzer test.[1]

Appellant raises a number of arguments on appeal, which we will review *seriatim*. The trial court found credible the police officer's testimony that she warned Appellant on the way to the hospital that they were going for a blood test and that if he refused he would lose his license for a year. We therefore reject Appellant's contentions that he was never warned of the consequences of refusal. We also reject Appellant's alternative argument that assuming warnings were given, they were inadequate because they were not given at the hospital itself. All that is required is that Appellant be warned of the consequences of refusal prior to administration of the test. *See Jackson v. Commonwealth*, 97 Pa. Commonwealth Ct. 602, 510 A.2d 396 (1986).

Appellant next argues that since both initial breathalyzer tests registered zero, no reasonable grounds existed to request Appellant to submit to an additional blood test. *McFarren v. Commonwealth*, 514 Pa. 411, 525 A.2d 1185 (1987). We believe that the police officer has demonstrated that reasonable grounds existed to request a different *type* of test by virtue of Appellant's bizarre behavior. *Department of Transportation, Bureau of Driver Licensing v. Penich*, 112 Pa. Commonwealth Ct. 303, 535 A.2d 296 (1988). This is not a case where a police officer is attempting to substantiate or enhance a borderline breathalyzer reading. *McFarren.* Appellant was placed under arrest for suspicion of driving under a controlled substance. The stated purpose of the blood

---

[1] There is no evidence in the record to support the trial court's finding with respect to the initial breathalyzer test. The officer who administered the test did not testify. There is nothing in the record to suggest that the breathalyzer tests resulted in a deficient sample or that Appellant failed to supply enough air to make the machine work.

test was to determine the controlled substances or medications, if any, that were making Appellant pace up and down the police station screaming that he, Calvin Matthews, was an imposter whom they were trying to frame. The police officer requested a different type of chemical test, not to check the accuracy of the first test, but to check for an entirely different type of chemical.

Appellant's third contention is that his blood test cannot be preconditioned on the signing of a hospital consent form. *Sickman v. Commonwealth,* 79 Pa. Commonwealth Ct. 173, 468 A.2d 909 (1983); *Maffei v. Department of Transportation,* 53 Pa. Commonwealth Ct. 182, 416 A.2d 1167 (1980). However, we note that Appellant never got to the hospital consent form, he refused to even give the nurse on duty his name and had to be physically removed from the hospital. In *Selan v. Department of Transportation, Bureau of Traffic Safety,* 108 Pa. Commonwealth Ct. 36, 529 A.2d 65 (1987), this Court held that the requirement of a consent form to take blood does not entitle a driver to refuse to submit to a blood test. In the present case, Appellant never even looked at the form and his uncooperative behavior constitutes a refusal.

Finally, Appellant argues that his mental condition rendered him incapable of not only submitting to a blood test or signing the hospital consent form but even giving his name to a hospital nurse. Whether a driver is capable of making a knowing and conscious refusal to take a chemical test is a question of fact for the trial court, which in this case resolved the facts against Appellant. *Schnitzer v. Commonwealth,* 85 Pa. Commonwealth Ct. 38, 480 A.2d 388 (1984); *Herbert v. Commonwealth,* 75 Pa. Commonwealth Ct. 28, 460 A.2d 920 (1983). Appellant made a number of knowing and conscious decisions on the day in question. He was able to put his car in gear and drive away at sixty miles per

hour when confronted by a police officer. He had no trouble performing three separate field sobriety tests and two breathalyzer tests. We must conclude, as did the trial court, that his sudden attack of schizophrenia when asked to give his name to a nurse at the hospital lacks credibility. The order of the trial court will be affirmed.

ORDER

Now, April 21, 1988, the order of the Court of Common Pleas of Allegheny County at No. SA 724-86, dated October 15, 1986, is hereby affirmed.