573 A.2d 645

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant**

**v.**

**Christopher PECK, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1989.

Decided April 12, 1990.

510

Donald H. Poorman, Asst. Counsel, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, for appellant.

William B. Eagan, with him, William F. Mabon, William B. Eagan Law Offices, Willow Grove, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

The Department of Transportation (DOT) appeals here an order of the Court of Common Pleas of Montgomery County sustaining the appeal of Christopher Peck (Peck) whose operating privileges were suspended because he refused to take a breathalyzer test[1]. We reverse.[2]

The arresting officer, called by DOT, testified that on November 14, 1987, at 1:13 A.M. he observed Peck's vehicle driven from the center line of the highway onto the shoulder and, while driving in the southbound lane of the highway he proceeded into the northbound lane twice. The officer pursued Peck's vehicle, observing a continuation of this dangerous and reckless driving, which he termed to be erratic driving. The officer testified as to when he had brought Peck's vehicle to a stop as follows:

> I went up to the car to speak to the operator and when I got to the car he handed me his driver's license. I told him he was being arrested for driving under the influence of alcohol and/or drugs.

1. *See* Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).
2. This case was reassigned to the opinion writer on January 19, 1990.

He stated to me, "I am under the influence of alcohol." R.R. 10a–11a.

The officer testified further that he had read to Peck the *Miranda* warnings twice whereupon Peck asked to speak to his lawyer, but when given the use of a telephone, declined to make the call. He also refused to answer questions on an "alcohol influence form". When informed of the Intoximiter 300 Test he was told that if he refused this test "he would lose his license or would be suspended." R.R. 11a.

Peck testified that he was 22 years of age; that his occupation was "general contractor," which he had been doing for two years; and that he completed high school in the "Class of '85". He recalled the experience described by the officer and recalled telling the officer that "I am under the influence of alcohol." He testified that he did not understand the form that he was asked to read and that as to the breathalyzer test "he was very foggy, confused." R.R. 16a.

On Peck's behalf, Robert Fisher, a psychologist with a Doctorate in Psychology, R.R. 17a, was called and testified that he had performed an evaluation of Peck thirteen months after the arrest, R.R. 27a, reaching a diagnosis and giving other testimony as follows:

A. Okay. Mr. Peck would be diagnosed as having a mixed learning disability, a generalized anxiety reaction and a dependent personality.

Q. Now, have you had an opportunity to discuss in particularity with Mr. Peck his actions on the night following his arrest?

A. Yes, I did.

Q. In light of your diagnosis do you have an explanation for the Court as to why he reacted in the way he did?

A. I think in stressful situations Chris' thinking breaks down and he becomes very dependent and not able to use his intellectual skills.

I also think that in terms of his reading and learning disability the skills that he has are not effectively used when he is under a great deal of pressure.

R.R. 18a.

Dr. Fisher concluded that, as a result of the evaluation in his office, Peck scored at an 11 year old level. R.R. 21a.

The trial judge concluded that because Peck had a learning disability it prevented him from making a conscious and knowing refusal to submit to the test.

We note that Peck apparently did not share the trial judge's view that he, the driver, had some intellectual deficiency. He does not question his intellectual competence to judge his own state of intoxication and to admit that he was driving under the influence of alcohol. No one suggests that this admission was not a knowing and conscious one. *See Matthews v. Commonwealth of Pennsylvania,* 115 Pa.Commonwealth Ct. 403, 540 A.2d 349 (1988).

 Having thus admitted the legal requirements to support the suspension, the burden shifted to Peck to show through competent medical evidence that his condition prevented him from making a knowing and conscious refusal, *Department of Transportation, Bureau of Driver Licensing v. Derhammer,* 118 Pa.Commonwealth Ct. 364, 544 A.2d 1132 (1988), and, while this is a question of fact, *Department of Transportation, Bureau of Driver Licensing v. Rogers,* 110 Pa.Commonwealth Ct. 453, 532 A.2d 935 (1987), our examination of the record leads us to conclude that the trial court's finding that Peck was incapable of making a knowing and conscious refusal is not supported by competent evidence. While the trial judge asserts support for his view, relying upon testimony of Peck's psychologist and lay testimony of Peck and the arresting policeman, there is no competent or unequivocal opinion evidence to support the conclusion reached. The trial judge stated:

This Court also holds that because of the defendant's learning disability, which manifests itself in difficulty integrating and processing information, the defendant

met his burden of proving that he did not make a knowing and conscious refusal to submit to the breathalyzer test. The defendant's contention was supported by competent medical testimony, (in addition this is his own testimony and that of Officer Creighton), which this Court found to be both credible and convincing. Dr. Fisher examined the defendant and diagnosed him as learning disabled with an especially difficult time processing information in stressful situations.

R.R. 38a.

There is no opinion by Dr. Fisher that this "learning disability" actually prevented Peck's refusal *in this case* from being knowing and conscious. To the contrary, Dr. Fisher admitted that the alcoholic influence was a contributing factor. He stated:

Q. Dr. Fisher, when one is under the influence of alcohol isn't it axiomatic that their cognitive abilities are somewhat impaired?

A. Yes.

Q. And isn't it possible then that the reason why Mr. Peck didn't understand what was happening to him was because by his own admission he was under the influence of alcohol?

A. That is a possibility, a *contributing factor.*

R.R. 22a (emphasis added).

He also testified:

A. It could have been [that] the alcohol could have played an affect [sic].

There is no statement that Peck's lack of cognitive abilities played any greater role in his refusal of the test than did his intoxication.[3]

Furthermore, the arresting officer does not support the trial judge's view. He testified:

3. We note that diminished mental capacity due in part to alcohol consumption is not a valid defense to a license suspension. *Department of Transportation, Bureau of Traffic Safety v. Andrews,* 95 Pa. Commonwealth Ct. 338, 505 A.2d 412 (1986).

Q. In your affidavit of probable cause you state that Peck appeared confused. Did he appear confused to you at the police station?

A. Yes, sir, but *no more than any other person under the influence.*

R.R. 13a (emphasis added).

 Aside from the question of whether there is the competent medical opinion of sufficient certainty to prove an unconscious and unknowing refusal that we have required in the past, *Derhammer,* we have here a driver who is licensed and thereby presumed to be sufficiently knowledgeable to fulfill the certifications that go with such licensing.[4] We believe that this presumption places a further burden on the driver who claims intellectual immaturity as a defense to admitted driving while intoxicated. His lack of intellectual maturity should not provide a license to disregard the driving rules.

If driving under the influence of alcohol can be excused on the basis of lack of some degree of intellectual functioning under stress, such a ruling will surely provide a broad avenue to legalize drunken driving by a vast percentage of intoxicated persons, thus worsening one of our society's major problems.

Since our examination of the record in this case reveals no sufficient competent medical opinion to support the trial judge's opinion that Peck was incapable of making a knowing and conscious refusal, *Derhammer,* we will reverse.[5]

## ORDER

NOW, April 12, 1990, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter

4. *See* Section 1508 of the Vehicle Code, 75 Pa.C.S. § 1508.

5. We can discern no basis for concluding that the Legislature would have the intention to create a new legal defense—a defense based on educational considerations: such considerations are for the licensing authorities and could hardly provide a defense or excuse a refusal under Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).

is hereby reversed and the suspension imposed by the Department of Transportation is reinstated.

DOYLE, Judge, dissenting.

Because Peck had the burden of proof and prevailed in the court below, our scope of review is to determine whether or not the findings of fact of that court are supported by substantial evidence and/or whether errors of law were committed. *Spirer v. Commonwealth*, 52 Pa.Commonwealth Ct. 381, 416 A.2d 587 (1980). Because of the limits of this scope of review, I believe we are compelled to affirm.

To sustain a suspension under Section 1547(b) of the Code, the Commonwealth must prove that the driver (1) was placed under arrest for driving while under the influence of alcohol; (2) was requested to submit to a breathalyzer test; (3) refused to do so; and (4) was warned that his license would be revoked if he refused to take the test. *Capozzoli Appeal*, 63 Pa.Commonwealth Ct. 411, 437 A.2d 1340 (1981). Peck does not dispute any of the above. The burden of proof was therefore on Peck to prove by competent evidence that he was incapable of making a knowing and conscious refusal. Whether or not he was capable was a question of fact for the court below. *Id.*

Whether or not Peck sustained his burden by producing *adequate*, that is, substantial evidence, is a question of law within the purview of this Court's review, but the credibility of witnesses and the question of capability to make a knowing and conscious refusal is within the province of the trial judge. Here, the lower court heard detailed testimony by a psychologist, Dr. Robert Fisher, who conducted a psycho-educational evaluation of Peck and concluded that Peck has several lifelong learning disabilities which result in his "lack of intellectual functioning when under stress." The Commonwealth did not present an expert to rebut Dr. Fisher's testimony. The trial judge accepted the testimony as true and, along with Peck's testimony, and that of a police officer, found the evidence to be competent to prove

Peck's inability to render a conscious, knowing refusal.[1] We cannot disturb this finding.

Because of Peck's low level of mental functioning under stress, Peck's license must be reinstated. This is an anomalous result. DOT argues in its brief that the evidence of Peck's chronic lack of ability to function under stress should render him ineligible to possess a driver's license at all. I would agree, but the remedy in such a situation falls under Section 1519 of the Code, 75 Pa.C.S. § 1519,[2] not under Section 1547. We note that nothing precludes DOT from pursuing the remedy available under § 1519 and at a subsequent hearing producing the testimony of Dr. Fisher, under subpoena if necessary.

Assuming that Peck would be found to be competent in a Section 1519 proceeding, we are faced with the question of whether or not a person who has a permanent disability, which can render him incapable of making a conscious and knowing refusal, will be allowed to refuse repeatedly testing and thereby negate the requirements of the law. I believe that each such refusal would have to be examined on an individual basis. The adjectives of "conscious" and "knowing" are not amenable to generalization.

1. The trial court's resolution of credibility conflict in favor of Peck distinguishes this case from *Matthews v. Commonwealth*, 115 Pa. Commonwealth Ct. 403, 540 A.2d 349 (1988), upon which DOT relies. Further, the trial court here in deciding credibility obviously did not believe that Peck's consumption of alcohol contributed to his inability to make a knowing and conscious refusal.

2. Section 1519 pertinently states:
 **Determination of incompetency**
 (a) **General rule.**—The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualifications shall be determined by an optometrist or ophthalmologist. The department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive.

518

Based on the foregoing discussion, very reluctantly, I believe we are obliged to affirm the order of the trial court.