583 A.2d 868

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF TRAFFIC SAFETY, Appellant,**

**v.**

**Carole A. HUMPHREY, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 1990.

Decided Dec. 6, 1990.

---

516

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, Harrisburg, for appellant.

David P. Posatko, Tunkhannock, for appellee.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

COLINS, Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals an order of the Wyoming County Court of Common Pleas (trial court) which sustained Carole A. Humphrey's (Humphrey) appeal from the suspension of her driver's license. The Department imposed a one-year suspension, because Humphrey refused to submit to a blood alcohol test, given by a police officer, pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b). Following a *de novo* hearing, the trial court found that Humphrey was unable to make a knowing and conscious refusal to submit to the blood alcohol test, because of the head injuries she had received in the accident. We reverse.

On December 5, 1989, Humphrey was involved in a two-car accident on Pennsylvania Route 29 in Monroe Township. Humphrey conceded that she consumed a substantial amount of alcohol that evening before the accident. Because of the accident, she was rushed to Nesbitt Memorial Hospital in Luzerne County and was treated for a concussion caused by the accident. Officer Daniel Oleniak arrived

while Humphrey was in the emergency room and observed that Humphrey exhibited signs of intoxication, including a strong odor of alcohol, slurred speech and bloodshot eyes. Hospital medical tests revealed that Humphrey had a blood alcohol level of .36. These tests results were, however, not available to the officer until some time after the events in question. This evidence was subpoenaed by the police in a later prosecution for driving under the influence. Having probable cause to believe that Humphrey was intoxicated, Officer Oleniak asked her to take a blood test to determine alcohol content.

In his request, Officer Oleniak read Humphrey the implied consent warning from a form, including a warning that her refusal to submit would result in the suspension of her driver's license. According to Officer Oleniak, Humphrey acknowledged that she understood the warning and responded "no, everything will be alright." Officer Oleniak interpreted this to be a refusal and, as a result, the Department suspended her license for one year, pursuant to Section 1547(b) of the Code. The trial court sustained her appeal of the license suspension, reasoning that Humphrey was physically unable to make a knowing and conscious refusal to submit to the test.

In order to sustain a suspension according to Section 1547(b) of the Code, the Department must prove that the driver: (1) was placed under arrest for driving while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal would result in license suspension. *Department of Transportation, Bureau of Driver Licensing v. Garlan,* 121 Pa.Commonwealth Ct. 400, 550 A.2d 873 (1988), *petition for allowance of appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989).

Once the Department establishes these four elements, the burden of proof shifts to the driver to prove by competent evidence that he or she was physically unable to make a knowing and conscious refusal to consent to a chemical test. *Id.* Moreover, medical evidence is needed to prove a less than obvious incapacity. *Department of Transportation,*

*Bureau of Traffic Safety v. Potter,* 118 Pa.Commonwealth Ct. 524, 545 A.2d 979 (1988). Whether there has been a refusal by a motorist to submit to a chemical test is a question of fact to be decided by the trial court. *Budd Appeal,* 65 Pa.Commonwealth Ct. 314, 442 A.2d 404 (1982).

The parties in this case do not dispute that, on December 5, 1989, Humphrey was arrested for driving under the influence of alcohol, that Officer Oleniak requested that she consent to a blood test after he read her the appropriate implied consent warnings, and that Humphrey verbally refused to take the test. The issue raised in this appeal pertains to whether Humphrey has proven by competent medical evidence that she was physically unable to make a knowing and conscious refusal to submit to the blood alcohol test requested by the officer.

■ Our standard of review in a license suspension case is limited to determining whether the trial court's decision is supported by substantial evidence, whether there has been an erroneous conclusion of law, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Garlan,* 121 Pa.Commonwealth Ct. at 401, 550 A.2d at 874.

To prove that a driver has a physical disability which prevents him or her from making a knowing and conscious refusal, the driver must introduce competent and unequivocal medical evidence to support this claim. *Department of Transportation, Bureau of Driver Licensing v. Peck,* 132 Pa.Commonwealth Ct. 509, 573 A.2d 645 (1990). Furthermore, according to *Peck,* a driver must prove that the physical disability, not the voluntary intoxication, played the greater role in rendering the driver incapable of making a knowing and conscious refusal. Humphrey did not meet this burden when she presented her evidence to the trial court. The doctor's testimony offered did not unequivocally prove that Humphrey's concussion caused her inability to make a knowing and conscious decision. The doctor testified:

Q: Tell me about the injuries that were later determined to be sustained by Carole Humphrey?

A:   We felt that she suffered an acute concussion of a deceleration injury from the car accident.   That she suffered sinusitis, which means she had a fluid collection in her left maxillary sinus on the left side of the face.   And, at first we felt that she may have had a fracture of that sinus area.   Farther [sic] evaluation of a plastic surgeon and CAT Scans revealed that that did not happen.   We also wanted to be sure she did not have any internal bleeding in her brain.   A CAT Scan was done and also proved that did not happen.

Q:   Could you tell us to a reasonable degree of medical certainty what effect those types of head injuries would have on a person's ability to make conscious and knowing responses to specific inquiries put to them?

A:   I think it's pretty obvious that during the first twenty-four hours after a concussion or after a deceleration injury like she had you are going to have some minor brain swelling which will make you confused, lethargic, difficult to make rational answers.   Usually that will clear within the first twenty-four hours after treatment.

Q:   Based upon your observations of Carole Humphrey some two to three hours after the accident, did she fit into that type of pattern or mold?

A:   I believe she did.

                .        .        .        .        .

Q:   Now, you've told us about concussions.   There's also your testimony in this case that there was a .36 blood alcohol content.   Could you tell us to a reasonable degree of medical certainty what effect having a .36 blood alcohol content or blood alcohol level would have on an individual?

A:   I think that high a level most people would be totally unresponsive, but most certainly lethargic, again difficult to make rational answers, difficult to do addition, subtraction.   Our usual work-up is to get a person to do addition, subtraction, where are you, what's your name, what's my name?   In that case it's very difficult to do that with that type of level.

Q: Did you attempt to do any of that with Carole when you first saw her at the hospital?

A: Yes, I did, and the only positive answer I really received was she knew who I was and where she was. Addition, subtraction, that type of thing, and of course if she knew what's happened, I was not able to get a good answer that evening.

■ Humphrey's doctor did not describe whether the intoxication or the concussion had a greater effect on her ability to make the refusal. Therefore, the doctor's testimony did not unequivocally support her claim that the concussion solely caused her inability to make a knowing and conscious refusal. In *Peck,* this Court reversed the trial court's finding that the driver was incapable of making a knowing and conscious refusal, because the driver failed to show that his disability played the greater role in his refusal, rather than his intoxication. The physical injury or disability must play the greatest role in rendering a driver incapable of making a knowing, conscious refusal to consent to a chemical test. If the intoxication influences the driver's ability to knowingly and consciously decide whether to take a chemical test, more than the physical disability, the driver cannot assert as a defense that he or she was unable to make a knowing, conscious decision.

Because our examination of the record reveals that Humphrey did not meet her burden of introducing unequivocal, competent medical evidence to support the trial court's finding that her physical inability to make a knowing and conscious decision was primarily caused by injury, rather than voluntary intoxication, we reverse the trial court's order.

KELLEY, J., dissents.

## ORDER

AND NOW, this 6th day of December, 1990, the order of the Court of Common Pleas of Wyoming County in the above-captioned matter is reversed.