605 A.2d 1279

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Betsy Ellen MOSS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1991.

Decided March 13, 1992.

Reargument Denied April 28, 1992.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

Francis A. Urso, for appellee.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals an order of the Court of Common Pleas of Montgomery County (trial court), wherein the trial court sustained Betsy Ellen Moss' (Moss') appeal of a one-year suspension of her operating privileges imposed by the Department pursuant to Section 1547 of the Vehicle Code (Code), 75 Pa.C.S. § 1547, for refusing to submit to chemical testing after her arrest for driving under the influence of a controlled substance.[1]  We reverse.

The relevant facts are as follows.  On June 3, 1990, Moss suffered a migraine headache and sought treatment at the emergency room of Lankenau Hospital.  As treatment for the migraine headache, the hospital administered fifty milli-

---

1. Section 1547(b)(1) of the Code, 75 Pa.C.S. § 1547(b)(1), provides that
   [i]f any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

grams of the pain killer Demerol, a potent central nervous system depressant, and twenty-five milligrams of Vistaril, which evidently enhances the effects of Demerol. Moss then proceeded to drive herself home.

En route to her home, however, Moss was stopped by the police. After having failed two field sobriety tests, Moss admitted to the police that she had just received a shot of Demerol and was on her way home from the hospital. The police placed her under arrest, requested that she submit to chemical testing, explained to her that her driver's license would automatically be suspended for one-year if she refused to submit to a blood test and told her that she had no right to speak with anyone with regard to the testing. Moss, nevertheless, refused because passenger and fiance Bob Hoffey was not permitted to accompany her to the testing location.

Thereafter, the Department notified Moss of the driver's license suspension in question and Moss appealed. On April 29, 1991, the trial court held a *de novo* hearing. In order to prove that her refusal to submit to chemical testing was unknowing and unconscious, Moss presented the testimony of Dr. Richard Saferstein,[2] who has been the Chief Forensic Scientist for the State of New Jersey, New Jersey State Police, for twenty-one years. Dr. Saferstein opined that Moss' confusion and behavior on the night in question was consistent with that of a person who had ingested fifty milligrams of Demerol. Generally, he testified that Demerol impairs body performance, affects balance and coordination, and causes a serious deterioration in judgment.

On the basis of Dr. Saferstein's testimony regarding the effects of Demerol, the trial court concluded that Moss did not make a knowing and conscious refusal.[3] Fur-

---

**2.** Dr. Saferstein has a doctorate in organic chemistry, but is neither a medical nor an osteopathic doctor.

**3.** In order to prove a *prima facie* case and uphold the suspension, the Department must show that the motorist was arrested for driving under the influence, that the arresting officer had reasonable grounds to believe that the motorist was operating a motor vehicle while under

ther, the trial court stated that "I fail to see where some of his [Dr. Saferstein's] credentials, because he doesn't have M.D. at the end or D.O. at the end of his name, would fail to qualify [him] as an expert under the circumstances envisioned by the case law." April 29, 1989 Hearing Transcript (H.T.) at 44.

■ There are three issues before us. We note that our scope of review with regard to them is limited to determining whether the trial court's findings of fact are supported by substantial evidence, or whether the trial court committed an error of law or abuse of discretion. *O'Connell.*

The first issue is whether a police officer has the authority to request that a motorist submit to chemical testing where the motorist admits that she is under the influence of a controlled substance.[4] The second issue is whether the testimony of a toxicologist, who is neither a medical nor osteopathic doctor, constitutes competent medical evidence to support a finding that the motorist's legal ingestion of

the influence, that the officer requested that the motorist submit to chemical testing, and that the motorist refused to do so. *Larkin v. Commonwealth,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987). Once the Department has sustained its initial burden, the motorist must then prove that his or her refusal was unknowing and unconscious. *Department of Transportation, Bureau of Driver Licensing v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Even though the trial court's determination as to whether a driver sustained his burden of proving that his refusal was unknowing and unconscious is factual, and thus unreviewable by this court, we may, as a matter of law, ensure that the trial court's determination is supported by competent evidence of record. *Department of Transportation, Bureau of Driver Licensing v. Grass,* 141 Pa.Commonwealth Ct. 455, 595 A.2d 789 (1991).

4. Moss argues that Demerol is not a controlled substance under the Code. According to Section 3731(a)(2) of the Code, 75 Pa.C.S. § 3731(a)(2), only those drugs found in The Controlled Substance, Drug, Device and Cosmetic Act (Act), Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144, are controlled substances for purposes of the Code. At the hearing, Moss never raised the issue of whether or not Demerol was a controlled substance. Further, on page eight of her brief, Moss admits that she was operating her vehicle under the effects of a Schedule II derivative drug known as Demerol. (Section 780–104(2) of the Act, 35 P.S. § 780–104(2), defines Schedule II controlled substances.) Thus, we find Moss' contention to be without merit.

Demerol rendered her incapable of making a knowing and conscious refusal to undergo chemical testing. The last issue is whether, as a matter of law, Moss' legal and knowing ingestion of a controlled substance constitutes a defense to her refusal to submit to chemical testing.

## I. EFFECT OF MOTORIST'S ADMISSION THAT SHE WAS UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE

Here, Moss informed the police officers that she was on her way home from the hospital and presented them with written evidence that she had received a shot of Demerol. The Department argues that Moss' admission that she was under the influence of Demerol constituted reasonable grounds for the police officer to request that she submit to chemical testing.[5] Further, the Department contends that her admission did not exempt her from submitting to chemical testing under the implied consent law.

■ Moss concedes that the mere fact that she admitted to being under the influence of Demerol neither exempted her from submitting to chemical testing, nor obviated the need for her to submit to the same.[6] Thus, this first issue is moot.

5. We note that one of the police officers testified that Moss was driving erratically and that Moss, in fact, admitted to making a wide right turn. This testimony can, of course, support a determination that the police officer had grounds to believe that Moss was driving under the influence and grounds to request that she submit to chemical testing. *Eckrote v. Department of Transportation, Bureau of Traffic Safety,* 115 Pa.Commonwealth Ct. 18, 539 A.2d 500 (1988).

6. In the case of *Department of Transportation v. Roney,* 104 Pa.Commonwealth Ct. 125, 521 A.2d 98 (1987), we held that "in *Department of Transportation, Bureau of Driver Safety v. Pedick,* 44 Pa.Commonwealth Ct. 44, 403 A.2d 181 (1979), this court stated that nothing in the law provides that a motorist's admission to driving under the influence of alcohol excuses him from his statutory duty of consenting to an alcohol test." *Roney,* 104 Pa.Commonwealth Ct. at 127, 521 A.2d at 99. Because the intent of the law with regard to both alcohol and controlled substances is to keep people from driving under the influence of either one, we conclude that cases involving one or both are analogous with regard to the requirement that one must submit to

## II. TOXICOLOGIST'S TESTIMONY AS COMPETENT MEDICAL EVIDENCE THAT MOTORIST'S REFUSAL WAS UNKNOWING AND UNCONSCIOUS

Although it is unclear whether or not this issue was raised before the trial court,[7] the trial court based its decision, in large part, on its conclusion that Dr. Saferstein was qualified to render an opinion as to whether or not Moss' refusal was knowing and conscious. Thus, we conclude that the above issue is properly before us.

The Department argues that only a medical or osteopathic doctor may testify as to the causal nexus between a motorist's condition and his or her alleged inability to make a knowing and conscious refusal to submit to chemical testing. Specifically, the Department contends that a toxicologist would only be capable of testifying as to the general, generic effects of certain drugs on humans, not the actual effect of a particular drug on a named individual at the time of refusal.

As to competence of a toxicologist to give expert testimony, we have held that a toxicologist is a competent expert in a "driving while under the influence of alcohol" case. *National Minerals v. Workmen's Compensation Appeal Board (Thomas)*, 73 Pa.Commonwealth Ct. 639, 458 A.2d 1061 (1983). *See also Commonwealth v. Britcher*, 386 Pa.Superior Ct. 515, 563 A.2d 502 (1989), *aff'd without opinion*, 527 Pa. 411, 592 A.2d 686 (1991). In the case *sub judice*, Dr. Saferstein equates Moss' intoxication from Demerol as indistinguishable from intoxication caused by alcohol; we find no reasonable basis for distinguishing those

chemical testing if requested to do so. *Kostyk v. Department of Transportation*, 131 Pa.Commonwealth Ct. 455, 570 A.2d 644 (1990).

7. When cross-examining Dr. Saferstein as to his qualifications, the Department made certain that he admitted that he was not licensed to practice medicine in this state or anywhere else. H.T. at 32–33. Further, toward the conclusion of the hearing, the Department also caused Dr. Saferstein to admit that he was not qualified to render an opinion as to whether or not Moss had a cognitive understanding of the nature of the circumstances that she was under at the time of her refusal. H.T. at 37.

cases on alcohol intoxication from this one on the critical issue involved.

Also, in the case of *Department of Transportation, Bureau of Traffic Safety v. Cassidy,* 103 Pa.Commonwealth Ct. 582, 521 A.2d 59 (1987), we reversed the trial court's order sustaining the driver's appeal to his one-year license suspension because the court improperly took judicial notice of the side effects of Regroton, a blood pressure medication, as found in the *Physician's Desk Reference.* We held that the testimony of a physician or *"other properly-qualified expert witness"* as to the relationship between the motorist's alleged incapacity to refuse chemical testing and the side effects of Regroton would be required to support the incapacity defense. *Id.,* 103 Pa.Commonwealth Ct. at 587, 521 A.2d at 61 (emphasis added). Additionally, we noted that "[a]ssuming further that this [competent expert] testimony were to be supplied, it would still require a *medical diagnosis* to determine that the symptoms from which the driver was allegedly suffering were, in fact, caused by ingestion of the prescribed substance." *Id.,* 103 Pa.Commonwealth Ct. at 587, 521 A.2d at 62 (emphasis added).

In *Cassidy,* we were concerned with the trial court's attempt to supply the requisite competent medical evidence that the driver's symptoms were caused by the drug. We did not address, however, the competency of a non-physician expert's testimony with regard to the incapacity defense, even though we very clearly rejected the trial court's assumption of the role of medical diagnostician and enunciated the requirement that competent medical testimony on the issue of whether the driver's symptoms were the result of ingesting a prescribed drug must consist of a medical diagnosis.[8]  Further, even though we stated that a "medi-

8.  Moss cites *Capozolli Appeal,* 63 Pa.Commonwealth Ct. 411, 437 A.2d 1340 (1981), in support of the proposition that she must present competent evidence in order to prove that her refusal was unknowing and unconscious and that whether she sustained that burden is a question of fact for the trial court. We agree, but, as we previously noted, we may, as a matter of law, ensure that there is competent

cal" diagnosis was required, we must read the language of the case as a whole, which includes the statement that some "other properly-qualified expert witness" may testify as to the nexus between a motorist's alleged incapacity to refuse chemical testing and the effects of a controlled substance.[9]

■ Moss notes that in the case of *Department of Transportation, Bureau of Driver Licensing v. Peck*, 132 Pa.Commonwealth Ct. 509, 573 A.2d 645 (1990), we considered the expert, but non-physician, testimony of a psychologist[10] with regard to whether or not an intoxicated driver with a learning disability was incapable of giving a knowing and conscious refusal. We find *Peck* to be applicable with regard to the competency of the non-physician in the instant case. Just as a non-physician psychologist potentially has sufficient expertise to offer competent testimony with regard to the nexus between an alleged incapacity to refuse chemical testing and a learning disability, so does a non-physician toxicologist and forensic scientist have such potential expertise with regard to the nexus between an alleged incapacity to refuse chemical testing and the effects of controlled substances.[11]

evidence to support the trial court's factual determination regarding the driver's satisfaction of her burden. *Grass.*

9. The trial court noted that a toxicologist is trained to
   ascertain the effects of certain substances on the human body. They are in the field of toxicology for the purpose of human beings and not because of dogs or cats or gold fish or what have you. And if they were in the field of toxicology and had a V.M.D. degree, a veterinarian medicine doctor, I would perhaps question the testimony presented by Dr. Saferstein. However, he is definitely a forensic toxicologist....
   I venture to say that there are many, many medical personnel ... that do not have the credentials that Dr. Saferstein has as far as the field of toxicology is concerned.
   H.T. at 43–44.

10. We have held that a clinical psychologist was competent as an expert witness. *Serrano v. Workmen's Compensation Appeal Board (Chain Bike Corp.)*, 123 Pa.Commonwealth Ct. 220, 553 A.2d 1025 (1989).

11. We note, of course, that the trial court has discretion to qualify or decline to qualify any and all witnesses as experts in their respective fields. *Tyus v. Resta*, 328 Pa.Superior Ct. 11, 476 A.2d 427 (1984).

In the case *sub judice,* the following testimony is relevant with regard to the competency of Dr. Saferstein's testimony:

Q. Do you have a professional opinion as to what affects [sic], psychological and mental, if any, the Demerol and Vistaril injection would have had on my client that evening?

A. Yes, I do.

Q. Now, within a reasonable degree of certainty within your profession, please tell the Court what effect that would have?

A. Gladly. As I indicated a few minutes ago, Demerol is a potent central nervous system depressant. It acts on the body in a very similar fashion in that respect as alcohol would. It would impair body performance and therefore it would affect balance and coordination. It would also cause a serious deterioration in one's judgment. One would become apprehensive. One would exhibit a diminishment in self control. Perhaps one would exhibit enhancement in false feeling of self-confidence. A person in that situation would take chances that a normal person would not. Reaction times would be impaired. They would be significantly extended. That would be about the gist of it.

Q. With respect to the mental processes involved, is there any confusion that results?

A. Definitely. Demerol, as alcohol, is a central nervous system depressant. It impairs judgment and self-control.

Q. You heard my client testify as to her confusion that evening. You heard one of the officers testify that she failed to follow his instructions.

A. I did.

Q. Are these actions consistent, in your opinion, and within a reasonable degree of certainty within your profession, with an individual who had received a Demerol injection some 50 minutes prior to the incident?

A. Well, under the circumstances of the administration of Demerol *in this case,* its peak effect would have been

felt approximately 60 minutes after administration. And the effect of the drug would have lasted approximately three hours. Given that time frame *this individual was definitely under the influence of Demerol.* And the effects that the drug had on her were consistent with her testimony in terms of her physical and mental impairment.

H.T. at 34–36 (emphasis added). We thus conclude that Dr. Saferstein's testimony was competent and constituted substantial evidence demonstrating that the Demerol incapacitated Moss.

## III. LEGAL AND KNOWING INGESTION OF A CONTROLLED SUBSTANCE AS A DEFENSE

We have held that a voluntary overindulgence in either alcohol or controlled substances does not constitute a defense based on incapacity. *Department of Transportation, Bureau of Driver Licensing v. Monsay,* 142 Pa.Commonwealth Ct. 163, 596 A.2d 1269 (1991); *Peck; Department of Transportation, Bureau of Driver Licensing v. Lello,* 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990). In *Lello,* [12] we restated our rationale for declining to treat incapacity due to voluntary overindulgence in an intoxicant as a valid defense: "the prospective loss of mental and physical incapacity was a foreseeable consequence when the driver undertook consumption...." *Id.,* 132 Pa.Commonwealth Ct. at 14, 571 A.2d at 563 (quoting *Walthour v. Department of Transportation,* 74 Pa.Commonwealth Ct. 53, 55, 458 A.2d 1066, 1067 (1983)).

Here, Moss argues that the cases holding that voluntary intoxication is not a defense are inapplicable to her situation because her receipt of a prescribed dosage of Demerol was not voluntary. She contends that "she [did] not have the option of voluntary ingestion of a substance injected into

---

**12.** In *Lello,* we held that a driver's refusal to submit to chemical testing was not excused as unknowing and unconscious merely because he voluntarily took twice the prescribed dosage of a prescription drug. We did not have to reach the issue of whether a driver's voluntary ingestion of a prescribed dosage of a controlled substance could ever constitute a defense based on incapacity.

her system by an Emergency Room nurse *given the pain, discomfort, and effects that a migraine headache had on her body."* Moss' brief at 11 (emphasis added). Further, Moss notes that the trial court made no finding as to whether or not her ingestion was voluntary.

■ We note, however, that Moss presented no medical or other competent evidence that the effects of her migraine headache were such that she was rendered incapable of making a voluntary choice as to whether or not to accept treatment in the form of a Demerol shot. We decline to assume the role of medical diagnostician and take judicial notice of the medical effects of a migraine headache.

■ Thus, even though Moss was incapacitated by the Demerol, according to Dr. Saferstein's testimony, such incapacity, as a matter of law, cannot serve as a valid defense under the circumstances of this case inasmuch as Moss failed to adequately demonstrate that her receipt of Demerol was involuntary, thereby rendering her incapacity an unforeseeable consequence of her ingestion. On that basis, we conclude that Moss failed to sustain her burden of proving that her refusal was unknowing and unconscious.

## IV. CONCLUSION

For the foregoing reasons, we hereby reverse the trial court's order and reinstate the one-year suspension imposed upon Betsy Ellen Moss by the Department of Transportation.

## ORDER

AND NOW, this 13th day of March, 1992, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby reversed and the one-year suspension imposed upon Betsy Ellen Moss by the Department of Transportation is reinstated.

KELLEY, Judge, dissenting.

Respectfully, I must dissent. The majority agrees that Moss has met her burden of showing that she was unable to make a knowing and conscious refusal because she was incapacitated by the Demerol injection, but nonetheless concludes that she has failed to show that such incapacitation was involuntary. It is with this last conclusion that I must disagree.

As stated by the majority, we have held that voluntary intoxication is not a defense to a chemical test refusal. *Monsay, Peck, Lello.* It is also true that we have applied this rationale not only to consumption of alcohol, but also to medication. *Lello.* I believe, however, that the majority paints with an overly broad brush in seeking to apply those cases to the facts before us.

In cases of alcohol intoxication, if the consumption itself was voluntary, public policy mandates that the licensee be held accountable for his voluntary acts. Given the heightened public awareness surrounding the incapacitating effects of alcohol (and narcotics), it is not unreasonable to presume that a person who voluntarily ingests these substances should be deemed aware of the possible results. In these cases, only truly involuntary consumption, such as "spiking the punch" or "slipping a mickey" should be available as a defense.

The same is not true of drugs administered for medicinal purposes. A bewildering variety of both prescription and over-the-counter drugs are used daily in our society. Most of these are required by law to contain warnings of their possible effects. If a licensee ignores or fails to heed a warning to abstain from operating a motor vehicle while under the influence of the drug, I would agree that such a failure is sufficient to render the resulting intoxication voluntary, thereby barring its use as a defense. Such were the facts in *Lello,* where the licensee was taking a prescription *that he knew to be a tranquilizer and voluntarily doubled the dosage.* On these facts, we held that:

[T]he person who exceeds his recommended dosage is no different than the person who has 'one drink too many' and then is unable to make a knowing and conscious refusal. In both cases there exists a situation where 'the prospective loss of mental and physical capacity was a *foreseeable consequence* when the driver undertook consumption....'

*Lello,* 132 Pa.Commonwealth Ct. at 14, 571 A.2d at 563 (emphasis added) (quoting *Walthour v. Department of Transportation,* 74 Pa.Commonwealth Ct. 53, 55, 458 A.2d 1066, 1067 (1983)).

In the present case, however, Moss testified that she had never before been administered an injection for her migraine headache.[1] Moss further testified that following the shot, she was instructed to "go home and lay down," but was given no other instructions.[2] Although the trial judge made no express credibility finding, it is obvious that he found Moss' testimony to be credible.

Thus, absent any warning, express or otherwise, I believe that Moss cannot be presumed to have known of the possible effects of Demerol. Although her *ingestion* of the drug may have been voluntary in the sense that she knew she was receiving medication, her lack of knowledge or warning as to the effects of the drug rendered her *intoxication* involuntary. Absent any warning, I cannot conclude that the prospective loss of mental and physical capacity was a foreseeable consequence. On these facts, the majority's reasoning imposes on every member of the driving public the affirmative duty to know or to discover the possible incapacitating effects of every drug administered to her, despite the fact that the medical professional administering the drug did not see fit to warn his patient of those effects.

Because I believe that imposing such a burden goes beyond the duties contemplated by the implied consent law, I would affirm the trial court and sustain Moss' appeal.

**1.** Reproduced Record (R.) at 25a.

**2.** R. at 26a.