Anthony T. MILLILI, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 17, 1998.

Decided July 10, 1998.

Stanton M. Lacks, Bensalem, for appellant.

Marc A. Werlinsky, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In–Charge, King of Prussia, for appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Anthony T. Millili appeals from an order of the Court of Common Pleas of Montgomery County upholding the Department of Transportation's (DOT) suspension of his driver's license pursuant to Section 1547(b)(1) of the Vehicle Code.[1]

On May 18, 1997, at approximately 2:10 a.m., Millili was stopped on State Route 202 by Officer Christopher Windish of the Buckingham Police Department. The basis for this stop was the fact that Millili's vehicle was swerving erratically and crossed over the double yellow lines on the road. When Officer Windish approached Millili, he detected a strong odor of alcohol.

As a result of Officer Windish's observations, he asked Millili to take several field sobriety tests, including a portable breathalyzer test. Based on Millili's unsatisfactory

---

1. Section 1547(b)(1) provides as follows:

   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

   75 Pa.C.S. § 1547(b)(1).

performance during these field sobriety tests, Officer Windish took Millili into custody and transported him to Allegheny Hospital for chemical testing.

At the hospital, Officer Windish read the implied consent form to Millili. Specifically, part two of the section concerning chemical testing was read word for word to Millili as follows:

> 2.  I am requesting that you submit to a chemical test of [written by hand was] ***blood/urine*** (breath, blood or urine. Officer chooses the chemical test).

(Form DL–26; Reproduced Record (R.R.) at 35a.) (Emphasis added.) Officer Windish made it clear that Millili did not have the option of submitting to either a blood or urine test, but rather insisted that Millili submit to **both** tests. Millili refused to sign the form and refused to have blood drawn. Officer Windish recorded Millili's response as a refusal to submit to chemical testing, transported Millili to the police headquarters, filled out the necessary paperwork and released Millili. Based on Millili's "refusal," DOT suspended Millili's operator's license for one year, and pursuant to Section 1550 of the Vehicle Code, 75 Pa. C.S. § 1550, he appealed that decision to the Court of Common Pleas of Montgomery County.

At the hearing on October 27, 1997, Officer Windish testified concerning the above facts, and on cross-examination, the following colloquy occurred:

> Q:  In fact, in your police report you indicate that you were taking him to Allegheny Hospital for a blood and urine test. Doesn't it indicate that in your police report, page 2, on the bottom?
>
> A:  Correct.
>
> Q:  Okay. So when you got to the hospital—and in fact, you instructed him,

he would be taking a blood and urine test, correct?

> A:  That's correct.
>
> Q:  Did you give him a choice of which test he was going to take?
>
> A:  No. My—that's what we were going for, the blood and urine. We've had run-ins with him before, possible Code 18. I was instructed for a blood and urine test.
>
> Q:  And in fact, on the form you gave him, you indicated both? He would take a blood and urine test?
>
> A:  That's correct.

(Notes of Testimony (N.T.), 10/27/97, at 10; R.R. at 12a.) Thus, it is clear that the officer required two tests: a blood-test sample *and* a urine-test sample.[2]

In response, Millili testified as follows:

> Q:  And when [Officer Windish] showed you the form, in fact, you read the form, did you not?
>
> A:  Yes.
>
> Q:  In fact, you saw the fact that it said "blood/urine test?"
>
> A:  Yes.
>
> Q:  When he indicated that to you, what did you tell him?
>
> A:  I told him I did not—I object to needles. I would prefer to take the urine test because—for obvious reasons, I didn't want a needle in my arm. I would prefer the urine.
>
> Q:  You told him you would take the urine, but not the blood?
>
> A:  I didn't want a blood test.
>
> Q:  What did he say to you?
>
> A:  I don't recall about any choice order. I just saw it down, and became very confused as to what he was asking me to

---

2.  In ruling on an objection during the course of Officer Windish's testimony, the Court noted that Officer Windish "wanted both tests and he indicated to [Millili] that he was going to take both tests." (N.T. 10/27/97, at 12; R.R. at 14a.)

On redirect examination, the following colloquy took place concerning the two-test requirement:

> Q:  Officer Windish, you had mentioned you requested him to take both the blood and urine test—

> A:  That's correct.
>
> Q:  —according to instructions. Who instructed you [to] do that?
>
> A:  I was instructed by the Chief of Police.
>
> Q:  For what reason was that requested?
>
> A:  Mr. Millili was involved with [the] Buckingham Police Department—

(N.T., 10/27/97, at 11; R.R. at 13a.)

do and what the form indicated the choices were.

It confused me when I saw blood/urine, whether it was blood and urine, or blood or urine. And it was the blood part, I felt bad about. The urine, I would have taken that.

Q: In parenthesis its says, "Breath, blood or urine. Officer chooses the chemical test."

A: Yes.

Q: But the officer wrote in, "blood/urine?"

A: Yes.

(N.T., 10/27/97, at 14–15; R.R. 16a–17a.) Following the testimony of both Millili and Officer Windish, the Court found that Millili had refused to submit to the chemical test and upheld DOT's suspension of his operator's license. Although the judge conceded that more than one test had been requested, he concluded that there was no harm from such a practice. In his ruling from the bench, he stated that

[t]here is nothing, however, to stop, at least in my estimation and in my reading of the case law, . . . an officer from asking for two tests. If they're inconsistent in any way, then that then becomes an issue for the [trier] of fact.

If [the operator] only takes one test, so be it. But it's up to the officer at the time to indicate what **tests** are to be taken, . . . and for what fluid those **tests** are to be taken. So I don't find the problem here with asking for two tests, to be quite frank with you.

. . . .

And I see no reason that [requiring two tests] would give rise to any confusion. The person knew that there was **a test** being offered to him.

(N.T. at 27–28; R.R. at 29a–30a.) (Emphasis added.) This appeal followed.

On appeal,[3] Millili argues that DOT did not meet its burden of proof that he refused to submit to chemical testing. Spe-cifically, Millili asserts that the request for two tests, without an accompanying explanation by the officer, was confusing and contrary to established case law. We are constrained to agree.

Section 1547(a) of the Vehicle Code provides:

(a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood. . . .

75 Pa.C.S. § 1547(a). In *Department of Transportation, Bureau of Driver Licensing v. Penich,* 112 Pa.Cmwlth. 303, 535 A.2d 296 (1988), we interpreted this section as follows:

[A] police officer with reasonable grounds to believe a licensee was operating a vehicle while under the influence initially has unfettered discretion under Section 1547(a) to request the licensee to submit to *one* of the following types of chemical tests: breath, blood, or urine. Once the police officer selects the *type* of test to be administered, however, his or her discretion is curbed. If a breath test is chosen, the police officer must administer it twice. If a blood or urine test is chosen, it may only be administered once unless the police officer establishes a reasonable ground for requesting a second test.

*Id.* 535 A.2d at 298 (emphasis in original) (footnotes omitted). Therefore, as a general rule, an officer is permitted to initially request a driver to submit to only one type of chemical test.

In spite of *Penich,* DOT argues that police officers generally have the unfettered authority to request a driver to submit to more than one type of chemical test. This is not correct as a general statement of the law. Although this Court has approved the administration of more than one type of chemical test, it has done so only in limited and ex-

---

**3.** Our standard of review in this case is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law were committed, or whether the trial court committed an abuse of discretion in making its determination. *Department of Transportation v. Renwick,* 543 Pa. 122, 669 A.2d 934 (1996).

traordinary situations. *See, e.g., Light v. Department of Transportation, Bureau of Driver Licensing*, 692 A.2d 652 (Pa.Cmwlth. 1997) (breathalyzer malfunctioned on initial test and thus produced inconclusive result); *Matthews v. Commonwealth*, 115 Pa.Cmwlth. 403, 540 A.2d 349 (1988) (subsequent test for different chemical based on appearance and dramatic mood swings of driver). We disagree with DOT's assertion that the above cases permit an officer to initially request a driver to submit to two or more chemical tests absent extraordinary circumstances such as a malfunction of the testing equipment. In the present case, there was no evidence of a malfunction with the testing equipment. Indeed, Millili was not permitted to submit to one initial chemical test, nor was he informed of the possibility of submitting to either a blood **or** urine test. Rather, Officer Windish made it clear that Millili would either submit to both blood and urine tests or he would take neither of the tests.

Furthermore, there was no indication, based on Millili's actions, that he might be under the influence of another chemical which might not be discovered by a single chemical test. Rather, Officer Windish testified that the reason that Millili was required to take a second test was because of Millili's "run-ins" with the Buckingham Police Department.[4] Because the facts of the present case are clearly distinguishable from the cases in which we have permitted additional chemical tests, DOT's reliance on those cases is misplaced.

Further support for the conclusion that the officer is permitted to chose only one test is found on the face of the Commonwealth's "chemical testing warnings and report of refusal to submit to chemical testing" form, DL–26, which, as noted above, indicates that an officer is authorized to request *a* chemical test. Nothing on the form indicates that an officer may request a driver to submit to more than one type of chemical test.

■ Thus, we make it clear that requesting a driver to submit to more than one chemical test, absent a malfunction in the initial testing procedure or other extraordi-

nary circumstances, is improper. The testimony of Officer Windish clearly establishes his intention to have Millili submit to both a blood and urine test. Therefore, we reverse the order of the Court of Common Pleas which suspended Millili's operator's license.

### ORDER

NOW, July 10, 1998, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby reversed.

---

**4.** As the issue was not raised by the parties, we do not address whether such conduct by the police department itself would give rise to a constitutional violation.