595 A.2d 789

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Margaret Anne GRASS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 21, 1990.

Decided July 26, 1991.

Timothy P. Wile, Asst. Counsel–In–Charge, Lansdale, Appellate Section, for appellant.

Wallace H. Bateman, Jr., Perkasie, for appellee.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

KELLEY, Judge.

This is an appeal by the Department of Transportation, Bureau of Driver Licensing (department), from an order of the Court of Common Pleas of Bucks County (trial court) sustaining the appeal of Margaret Anne Grass from the suspension of her operating privileges for failure to submit

to chemical testing in compliance with Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547. We reverse.

The department notified Grass, by official notice dated and mailed October 25, 1989, that her operating privilege was scheduled to be suspended for one year as a result of her refusal to submit to chemical testing on October 6, 1989. Grass appealed that suspension to the trial court. That court, after holding a de novo hearing on Grass' appeal on January 30, 1990, concluded that Grass was unable to make a knowing and conscious refusal to submit to chemical testing in the form of a breath test. This conclusion was based on the trial court's findings that Grass suffered from premenstrual syndrome (PMS), and that she had been temporarily confused at the time of testing because the stressful circumstances [1] surrounding her arrest had exacerbated her PMS symptoms.

New Britain Township police officer, Michael Vasta, testified that he encountered Grass after responding to a radio call which described Grass' car driving down the middle of Route 202. Although Grass told Officer Vasta that she had not been drinking, Officer Vasta stated that he detected a strong odor of alcohol coming from Grass' vehicle, that she could not stand when asked to exit her vehicle, and that she was unable to walk to the rear of her vehicle without assistance. Grass then failed two field sobriety tests and failed to adequately complete a preliminary breath test.

Based on these observations, Officer Vasta took Grass into custody for driving under the influence. He then transported Grass to the New Britain police station where he informed her of the implied consent law, and told her that if she refused to submit to chemical testing, she would

1. Grass testified that, in addition to suffering from PMS on October 6, 1989, she was upset because a warning light had come on in her car, her doctor had removed several endocervical polyps on October 4, 1989 which may have been malignant, she was discouraged about her prospects of receiving a promotion for which she had applied, and she claimed to have had difficulty breathing when asked to provide a breath sample. Officer Vasta testified that Grass had informed him of none of these circumstances.

lose her driver's license for one year. Officer Vasta testified that Grass indicated that she understood the consequences of refusing and agreed to take a breath test. He also indicated that Grass was responsive and able to comprehend.

Although Grass attempted to perform a breathalyzer test, she was unsuccessful and less than fully cooperative in doing so. After Officer Vasta informed Grass again that a failure to cooperate would result in suspension of her license, Grass, when given a second opportunity to take the test, would not blow into the mouthpiece. Instead, Officer Vasta testified that she just stood in front of the breathalyzer asking questions like "What is going on?" and "Can I talk to my lawyer?" [2]

Officer Vasta testified that he explained the implied consent law and the procedure for providing an adequate breath sample again. He also informed Grass that she did not have a right to counsel before completing the breath test. After advising Grass at least four times that she had no right to counsel with regard to the breath test, and that she would lose her license for one year if she refused to take the test, Officer Vasta took her conduct as a refusal.[3]

In order to sustain a suspension according to Section 1547(b) of the Vehicle Code, the department must prove that the driver (1) was placed under arrest for driving while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that the refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa.Commonwealth Ct. 400, 550 A.2d 873 (1988). Once the department establishes these four elements, the burden shifts to the driver to prove by

**2.** Officer Vasta testified that he had not given Grass her *Miranda* warnings and that he never told her that she had a right to an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Grass does not contend that she was confused by a reliance on her constitutional right to counsel.

competent evidence that he or she was physically unable to knowingly and consciously refuse chemical testing. *McDonald v. Department of Transportation, Bureau of Driver Licensing,* 130 Pa.Commonwealth Ct. 276, 567 A.2d 1127 (1989). Where, as here, a driver has not sustained injuries creating an obvious inability to comply with the request to be tested, the burden of showing incapacity to make a knowing and conscious refusal must be established by competent medical testimony. *Department of Transportation, Bureau of Driver Licensing v. Derhammer,* 118 Pa.Commonwealth Ct. 364, 544 A.2d 1132 (1988).

Whether or not a licensee has satisfied this burden is a factual determination for the trial court. *Department of Transportation, Bureau of Driver Licensing v. Rogers,* 110 Pa.Commonwealth Ct. 453, 532 A.2d 935 (1987). However, the issue of whether or not the trial court's finding that a licensee has sustained her burden is supported by adequate evidence is a question of law within the purview of this court's review.[4]

It is undisputed that the department has met its initial burden for sustaining Grass' license suspension under § 1547. Thus, the only issue here is whether there is competent evidence to support the trial court's determination that Grass was unable to make a knowing and conscious refusal to submit to chemical testing due to her PMS.

Grass testified on her own behalf that she suffers from PMS, and has so suffered in varying degrees for about the past ten years. This testimony was corroborated and enlarged upon by her husband. Dr. Jean Fitzgerald, M.D. also testified with a reasonable degree of medical certainty that Grass suffers from PMS.[5] She further testified that

4. Our scope of review in license suspension cases is limited to determining whether the trial court's findings are supported by competent evidence, or errors of law have been committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Lello,* 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990).

5. Dr. Fitzgerald explained that she diagnosed Grass as suffering from PMS on October 4, 1989 as part of Grass' annual gynecological

PMS can cause a sufferer a great deal of anxiety, stress, lack of concentration and confusion, and that these symptoms could be exacerbated by stressful situations. She further stated that Grass' behavior on October 6, 1989, was consistent with the symptoms of PMS and could have been caused by her PMS.

■ However, nowhere in her testimony was Dr. Fitzgerald able to state with a reasonable degree of medical certainty that Grass' PMS rendered her unable to make a knowing and conscious refusal. When asked if she could state within a reasonable degree of medical certainty that Grass was suffering from these symptoms on October 6, 1989, Dr. Fitzgerald answered "It's possible." She then stated, in response to a request by Grass' counsel for elaboration, that based on Grass' pattern of PMS, as explained by Grass and her husband, "it's not without possibility" that Grass' PMS contributed to her problems on the evening of October 6, 1989.

We do not believe that such conjectural and speculative statements, combined with a diagnosis of PMS and a generic statement regarding the symptoms of PMS, constitutes competent medical testimony sufficient to sustain Grass' burden, because it fails to establish the necessary causal nexus between Grass' PMS and her inability to make a knowing and conscious refusal on October 6, 1989. *See Derhammer.* Moreover, Dr. Fitzgerald's testimony also fails to establish that Grass' physical disability, her PMS, rather than her intoxication, played a greater role in rendering her incapable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver*

examination stating, "Peggy reported to me that she continued to have premenstrual syndrome-type difficulties, although we did not elaborate on the exact nature of those at the time." (R. 70a). Dr. Fitzgerald further explained on cross examination that her diagnosis was based solely on Grass' response to a question regarding PMS:

All I observed was the question, how are you feeling, do you have a problem with PMS? And Peggy related that she has had similar problems for years, and it's still continuing. And I didn't even go into any more detail than that with her at that time. (R. 76a).

*Licensing v. Humphrey,* 136 Pa.Commonwealth Ct. 515, 583 A.2d 868 (1990).

Accordingly, we reverse.[6]

## ORDER

NOW, this 26th day of July, 1991, the order of the Court of Common Pleas of Bucks County, No. 89–9424–18–6, dated February 2, 1990, is reversed.

---

6. Because the trial court's finding that Grass was incapable of making a knowing and conscious refusal was not supported by competent evidence, we need not address the issue of whether PMS could ever be sufficient cause to vitiate a refusal.