614 A.2d 349

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Patricia Gaile ZELTINS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted May 8, 1992.

Decided Aug. 14, 1992.

46

David R. White, Asst. Counsel, Appellate Section, for appellant.

Gregg A. Parker, for appellee.

Before SMITH, and KELLEY, JJ., and LORD, Senior Judge.

SMITH, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the order of the Court of Common Pleas of Delaware County sustaining the appeal of Patricia Gaile Zeltins (Zeltins) from a one-year suspension of her operating privileges for refusal to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547.

On April 2, 1990, at approximately 10:11 p.m., Officer Raymond Castaldi of the Marple Township Police Department came upon a vehicle parked by the side of the road with its motor running and lights on. Officer Castaldi testified at hearing before the trial court that he found Zeltins asleep at the wheel and her two young grandchildren in the back seat. Officer Castaldi was able to awaken Zeltins only after several attempts to do so. When Zeltins stepped out of her car, she fell against Officer Castaldi, who noticed a smell of alcohol on Zeltins' breath. Zeltins was then placed in Officer Castaldi's vehicle. When another officer began to remove the grandchildren from Zeltins' car, she became belligerent and started to pound on the windows of the police car. Zeltins and her grandchildren were then transported in separate cars to police headquarters where Zeltins was placed in a holding room. Thereafter, Zeltins was read her *Miranda*[1] rights and was transported to Haverford Community Hospital for a blood-alcohol test which Zeltins refused. Officer Castaldi later warned Zeltins upon their return to police headquarters that her refusal would result in the loss of her license for one year. Officer Castaldi testified that Zeltins did not seem to be aware of what was going on around her.

Zeltins suffered from an upper respiratory tract infection and had obtained a prescription for Augmentin on April 1, 1990. On April 2, 1990, Zeltins took three 500 milligram doses of Augmentin over a period of approximately eight hours. After work that day, Zeltins drove to a day care center to pick up her grandchildren, and because she was feeling sick, very

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dizzy, and light headed, drove to the nearby home of a friend, Maria Argyropoulos, who invited Zeltins and her grandchildren to stay for dinner. During the course of the evening, Zeltins had one small cordial glass of creme de menthe and no other alcohol. Argyropoulos testified that Zeltins had been under severe stress due to the disappearance of her daughter, that Zeltins had been very sick that weekend, and that she noticed severe behavioral irregularities in Zeltins that evening. Shortly thereafter, Officer Castaldi encountered Zeltins' vehicle.

Zeltins testified that the apparent effects of the Augmentin made her feel "like I was going to jump out of my skin and I couldn't hardly talk." January 16, 1991 Hearing, N.T., pp. 76–77. These feelings "progressively got worse" throughout the afternoon and evening of April 2, 1990. In addition, the trial court heard testimony from Dr. Barbara A. Wester, Associate Director of Anti–Infectives at SmithKline Beecham, the manufacturer of Augmentin, who testified that she is a medical doctor and is responsible for conducting clinical studies with Augmentin; that it is an oral antibiotic, a combination of amoxicillin and clavulanic acid, and is commonly prescribed for, inter alia, upper respiratory infections; that among Augmentin's documented central nervous system side effects are anxiety, agitation, behavioral changes, confusion, dizziness, and hyperactivity; that there are no restrictions on driving or drinking while taking Augmentin; and that she did not have an opinion as to what effect this drug actually had on Zeltins. Dr. Wester also testified that there had been reports of hostility and aggression as side effects of Augmentin.

Dr. Daniel Hussar, a professor of pharmacy at Philadelphia College of Pharmacy and Science and a licensed pharmacist, testified that among Augmentin's side effects were those noted by Dr. Wester; that the normal dosage of Augmentin is 250 milligrams every eight hours, but some situations call for 500 milligrams every eight hours; and that three doses of Augmentin administered in a time period of less than twenty-four hours would increase the possibility of adverse side effects. He opined that ingestion of three 500 milligram doses

of *Augmentin* within an eight-hour period could cause behavioral and central nervous system side effects and that this condition would have impeded Zeltins' ability to give a knowing and fully conscious refusal to take a blood test.

Dr. C. Wayne Jones, a clinical psychologist at the Philadelphia Child Guidance Clinic and a faculty member in the Department of Psychiatry at the University of Pennsylvania, testified that he maintained a professional relationship with Zeltins; that in the months prior to April 2, 1990, he observed that Zeltins was under severe stress due in part to the unexplained disappearance of her daughter; and that the amount of stress she suffered would within a reasonable degree of psychological certainty render Zeltins incapable of making a knowing and conscious refusal to take a blood test.

■ The trial court sustained Zeltins' appeal of her license suspension since she was given the license suspension warning after the alleged refusal at the hospital and upon her return to the police headquarters. Further, Zeltins was not physically or emotionally capable of making a knowing and conscious refusal. On appeal to this Court, DOT argues that the trial court erred in finding that DOT failed to sustain its burden of proving that Zeltins refused to submit to chemical testing; that Zeltins failed to meet her burden of proving, through competent medical evidence; that she was incapable of making a knowing and conscious refusal to take the test; and that Zeltins cannot raise her ingestion of an excessive dosage of prescription medicine as a defense to her refusal.[2]

■ In order to sustain a license suspension according to Section 1547(b) of the Vehicle Code, the Department must prove that the driver (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that

**2.** This Court's scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence, whether errors of law have been committed, or whether the decision of the trial court demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Monsay,* 142 Pa.Commonwealth Ct. 163, 596 A.2d 1269 (1991).

a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Walsh,* 146 Pa.Commonwealth Ct. 461, 606 A.2d 583 (1992). There is no dispute in this case as to whether DOT met its burden of proof to establish the first three of these elements.

▆▆▆ Although the trial court's conclusion is based in part on an untimely warning, our courts have held that an untimely, and thus defective, warning can be cured by a post-warning opportunity to assent to chemical testing. *Henderson v. Department of Transportation,* 123 Pa.Commonwealth Ct. 1, 553 A.2d 105 (1989); *Jackson v. Commonwealth,* 97 Pa.Commonwealth Ct. 602, 510 A.2d 396 (1986).[3] In *Henderson,* the licensee was arrested, refused a blood test, and was then advised of the consequences of this refusal. This Court held that the licensee was afforded an ample post-warning opportunity to assent to take the test because he was detained for an additional twenty minutes subsequent to the warning, thus curing the defective warning. In the present case, Zeltins was detained overnight, never assented to take a blood test, and therefore her post-warning opportunity cured the defective warning. Moreover, neither a request to submit to chemical testing nor a warning regarding the consequences of refusal need be made at the situs of the equipment. *See Department of Transportation, Bureau of Driver Licensing v. Courson,* 136 Pa.Commonwealth Ct. 586, 584 A.2d 386 (1990); *Department of Transportation, Bureau of Driver Licensing v. Stay,* 114 Pa.Commonwealth Ct. 532, 539 A.2d 57 (1988). Accordingly, the trial court erred in holding that DOT did not meet its burden.

**3.** DOT argues that the trial court's finding in this regard is not supported by Officer Castaldi's testimony that he told Zeltins at the station prior to going to the hospital that she would lose her license for one year if she refused the test, and that he again gave her this warning upon returning to the police station. However, questions of credibility and conflicts in the evidence are for the trial court to resolve, not this Court. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Since sufficient evidence exists in the record to support the trial court's finding, this Court is precluded from overturning it.

■ Once DOT has established the requisite elements, the burden shifts to the driver to prove by competent evidence that he or she was physically unable to knowingly and consciously refuse chemical testing. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Where, as here, a driver has not sustained injuries creating an obvious inability to comply with the request to be tested, the burden of showing incapacity to make a knowing and conscious refusal must be established by competent medical testimony. *Department of Transportation, Bureau of Driver Licensing v. Grass,* 141 Pa.Commonwealth Court 455, 595 A.2d 789 (1991). Whether a licensee has satisfied this burden is a factual determination to be made by the trial court. *O'Connell.*

■ DOT argues that Zeltins' expert witnesses lack the required expertise and knowledge to render an opinion on the issue of whether Zeltins was incapable of making a knowing and conscious refusal due to the medication or due to her stress because neither Hussar nor Jones are medical doctors. Although DOT raises numerous other objections to the qualifications of Zeltins' expert witnesses, this Court does not find a clear abuse of discretion by the trial court in qualifying the witnesses as experts in their respective fields. Furthermore, in none of the testimony cited by the trial court as the basis of its decision did the experts exceed the scope of their expertise in their respective fields.

■ In Pennsylvania, it is clear that the admission of expert testimony is at the discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear abuse of discretion. *Wicks v. Department of Transportation,* 139 Pa.Commonwealth Ct. 336, 590 A.2d 832 (1991). The trial court may qualify or decline to qualify any and all witnesses as experts in their respective fields. *Department of Transportation, Bureau of Driver Licensing v. Moss,* 146 Pa.Commonwealth Ct. 330, 605 A.2d 1279 (1992). If a witness has any reasonable pretension to specialized knowledge on a particular subject under investigation, the witness may testify and the weight to be given this evidence is for the trier of fact.

*McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Superior Ct. 600, 533 A.2d 436 (1987), *appeal denied,* 520 Pa. 589, 551 A.2d 215 & 216 (1988). Properly qualified expert witnesses other than a doctor may testify as to the nexus between a motorist's alleged incapacity to refuse chemical testing and the effects of a controlled substance. *Moss.* Thus, the trial court did not err in this regard.

■ DOT further claims that the testimony of Drs. Hussar and Jones is equivocal. Although conjectural and speculative statements regarding the necessary causal nexus between a driver's condition and his or her inability to make a knowing and conscious refusal are insufficient to sustain the driver's burden, *Grass,* a review of the record as a whole demonstrates that the testimony on which the trial court relied was unequivocal regarding the connection between Zeltins' physical and emotional state and her lack of a knowing and conscious refusal. Both Hussar and Jones were unequivocal in their respective assertions that Zeltins was incapable of making a knowing and conscious refusal due to the effects of the Augmentin and her severe stress.

■ DOT last argues that the trial court's finding that Zeltins exceeded the recommended dosage for Augmentin negates her defense to the refusal and relies on *Department of Transportation, Bureau of Driver Licensing v. Lello,* 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990), for the proposition that a motorist's incapacity resulting from a voluntary over-indulgence of prescription medication is no defense to a refusal to take a chemical test. However, in *Lello,* the driver testified that he intentionally took twice the recommended dosage of a prescription tranquilizer. Thus, the driver's condition was tantamount to voluntary intoxication and was therefore no defense to the license suspension procedure. In the matter sub judice, Zeltins' prescription only indicated that the pills were to be taken three times a day and did not indicate that one should be taken every eight hours. On April 2, 1990, Zeltins took one pill with each meal, and thus had, as the trial court found, taken three pills within an eight hour period. Zeltins testified that this was consistent with previous pre-

scriptions for antibiotics she had received recommending that the pills be taken with meals. There is no evidence to suggest that Zeltins knowingly exceeded the recommended dosage or that she was made aware of the possible side effects. Therefore, *Lello* is inapposite to the present case.

Accordingly, because the trial court's finding of incapacity to make a knowing and conscious refusal has a sufficient factual basis in the record and is supported by competent testimony, the order of the trial court is affirmed.

### ORDER

AND NOW, this 14th day of August, 1992, the order of the Court of Common Pleas of Delaware County is affirmed.