**Mark J. PLOTTS**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1995.

Decided May 30, 1995.

**134**

Timothy P. Wile, Asst. Counsel In–Charge Appellant Section, for appellant.

Frank De Simone, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

COLINS, President Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Montgomery County (common pleas court), which sustained the appeal of Mark J. Plotts (Plotts) from a Department order that suspended his driver's license for failure to submit to chemical testing, pursuant to Section 1547(b) of the Vehicle Code (Code).[1] For the reasons set forth herein, we reverse.

The facts as found by the common pleas court are summarized as follows. On December 27, 1992, Plotts attended a Christmas party where he consumed two vodka and tonics over a two and one-half hour period. After consuming the drinks, Plotts began to feel nauseous, his hands began to shake, and he began to have a panic attack. Plotts, who was under treatment for panic attacks, took Xanax, a medication prescribed by his physician, to alleviate the onset of such attacks. After taking the medication, Plotts attempted to begin the twenty-five-mile trip to his home in Holland, Pennsylvania. Shortly after beginning the trip, Plotts began to feel dizzy and pulled into a church parking lot located in Lower Providence Township, Montgomery County, Pennsylvania, and passed out.

Officer Reginald Nealy (Officer Nealy) of the Lower Providence Township Police Department noticed Plotts's automobile with its lights on in the church parking lot. As he approached the automobile, Officer Nealy noted that Plotts was asleep behind the wheel and attempted to awaken Plotts; Officer Nealy had great difficulty waking Plotts. After Plotts exited the automobile, Officer Nealy asked him to perform field sobriety tests; Plotts failed. Officer Nealy placed Plotts under arrest for driving under the influence and transported him to a nearby hospital for observation and to draw blood. On this trip to the hospital, Plotts vomited in the patrol car and urinated on himself.

At the hospital, Officer Nealy read the implied consent warning to Plotts and gave him a copy to read. Officer Nealy read from the form to Plotts, but Plotts responded that he was unable to understand. Officer Nealy

---

1. Section 1547(b)(1) of the Code provides:
 If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of person for a period of twelve months.
 75 Pa.C.S. § 1547(b)(1).

deemed Plotts's response a refusal to submit to chemical testing. Consequently, by official notice dated January 21, 1993, the Department notified Plotts that his driver's license was scheduled to be suspended for one year, effective February 25, 1993. Plotts filed a statutory appeal to the common pleas court.

A *de novo* hearing on Plotts's appeal was held on October 4, 1993. By order dated October 4, 1993, the common pleas court sustained Plotts's appeal, determining that the Department met its burden of establishing a refusal by Plotts, but concluding that Plotts was incapable of making a knowing and conscious refusal to submit to chemical testing. This appeal followed.

The Department, in its one issue presented for this court's review, questions whether the common pleas court erred when it held that Plotts's inability to make a knowing and conscious refusal, which inability was caused by Plotts's voluntary ingestion of alcohol and a controlled substance, may properly constitute a defense to that chemical testing refusal. In reviewing the decision of a court of common pleas in the area of driver's license suspension, we are "confined to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 250–52, 648 A.2d 285, 292 (1994).

In *Ingram*, Mr. Justice Montemuro, writing for a majority of our Supreme Court, set forth the current state of the law as it pertains to these cases:

> The burdens of proof applicable in license suspension cases are as follows:
>
> [U]nder Section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his driver's license.

> Once the Commonwealth meets its burden it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the test. . . .

*Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 248, 555 A.2d 873, 876 (1989). Moreover, we held in O'Connell that questions of credibility and conflicts in the evidence are for the trial court to resolve. *Id.* (citing *Commonwealth of Pennsylvania, Department of Transportation v. Korchak*, 506 Pa. 52, 483 A.2d 1360 (1984)). If there is sufficient evidence in the record to support the findings of the trial court we must pay proper deference to it as factfinder and affirm. *Id.*

*Id.* at 252, 648 A.2d at 293.

The Department argues on appeal that the common pleas court erred because an inability to knowingly and consciously refuse chemical testing caused by the voluntary consumption of alcohol does not, as a matter of law, constitute a defense to a refusal to submit to chemical testing. In support of this argument, the Department cites this Court's decisions in *Department of Transportation, Bureau of Driver Licensing v. Monsay*, 142 Pa.Commonwealth Ct. 163, 596 A.2d 1269 (1991); *Ascolese v. Department of Transportation*, 105 Pa.Commonwealth Ct. 95, 522 A.2d 1204 (1987); *Walthour v. Department of Transportation*, 74 Pa.Commonwealth Ct. 53, 458 A.2d 1066 (1983). Plotts counters by arguing that the outcome of this case is controlled by this Court's decision in *Department of Transportation, Bureau of Driver Licensing v. Zeltins*, 150 Pa.Commonwealth Ct. 44, 614 A.2d 349 (1992), and that the common pleas court was correct to rely upon *Zeltins*.

 As the record contains no evidence suggesting that Plotts sustained obvious physical injuries, Plotts bore the burden of presenting competent medical evidence to show he was incapable of making a knowing and conscious refusal to submit to testing. *Bell v. Department of Transportation, Bureau of Driver Licensing*, 147 Pa.Commonwealth Ct. 157, 607 A.2d 304, *petition for allowance of appeal denied*, 533 Pa. 613, 618

A.2d 403 (1992). The common pleas court based its decision solely on the testimony of Dr. Arthur Boxer, who testified that when Officer Nealy found Plotts in the church parking lot, Plotts was comatose because of his ingestion of alcohol and Xanax. According to Dr. Boxer, this combination of alcohol and Xanax makes it difficult to maintain consciousness; therefore, Plotts's ability to know and comprehend was significantly impaired. The common pleas court found Dr. Boxer's testimony credible, and we are bound by this credibility determination.

However, while it is true that a trial court's determination as to whether a licensee sustained his burden of proving that a refusal to submit to chemical testing was unknowing and unconscious is factual and, thus, unreviewable, this Court may, as a matter of law, ensure that the trial court's determination is supported by competent evidence of record. *Department of Transportation, Bureau of Driver Licensing v. Moss*, 146 Pa.Commonwealth Ct. 330, 605 A.2d 1279, *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

In reviewing the record in this case, we must agree with the Department that the common pleas court erred in determining that Plotts sustained his burden of proving an inability to knowingly and consciously refuse chemical testing. The common pleas court, like Plotts, relies upon this Court's decision in *Zeltins* as controlling the outcome of the case *sub judice*. However, *Zeltins* is distinguishable from the case at hand.

In *Zeltins*, the licensee consumed one cordial glass of creme de menthe after having taken the recommended dosage of the prescription drug Augmentin for treatment of an upper respiratory infection. Zeltins offered unequivocal medical testimony to show that she was incapable of making a knowing and conscious refusal because of the effects of Augmentin and severe stress; no mention was made of the effect alcohol would have on a person taking Augmentin.[2] The record in this case shows, however, that Plotts's inability was clearly caused by his voluntary consumption of alcohol.

In the case *sub judice*, Plotts's expert testified that when alcohol is mixed with Xanax, "you have difficulty maintaining a level of consciousness, and your thinking ability is ... significantly impaired." (Notes of Testimony (N.T.) at 23.) The expert further testified that Plotts's lack of bladder control, incontinence, vomiting, and comatose state were all indicia of Plotts not being cognitively able to appreciate what the officer was saying.[3] Plotts's expert opined that these symptoms were not side-effects of Xanax, but instead were caused by the combination of Xanax and alcohol. (N.T. at 30.)

Accordingly, since the expert in *Zeltins* did not testify that the incapacity of the licensee was due in part to the licensee's voluntary consumption of alcohol, but Plotts's expert did testify to that effect, *Zeltins* is distinguishable from the case at hand and does not control the outcome of this case.

We agree with the Department that resolution of this case is controlled by our deci-

---

2. Testimony elicited at her trial showed that the side-effects of Augmentin are anxiety, agitation, behavioral changes, confusion, dizziness, and hyperactivity. Three doses of Augmentin administered in a time period of less than twenty-four hours increases the possibility of adverse side-effects. Three 500 milligram doses of Augmentin within an eighteen-hour period causes behavioral and central nervous system side-effects that may impede Zeltins' ability to give a knowing and fully conscious refusal to take a blood test; and, that Zeltins was under severe emotional distress at the time because of the disappearance of her daughter. *Id.* at 48–51, 614 A.2d at 352.

3. Q. You heard the officer say that he was vomiting in the car, and that he was vomiting either before or after he was trying to read that form to him. Now, knowing what you know about Mr. Plotts, and the medicine and everything, do you feel he was able to understand what the officer was saying to him at that time, in the condition he was in?
A. No. My professional opinion, he was unable to comprehend what the officer was saying to him.
Q. Why is that?
A. Because, again, the events that occurred, vomiting, being in a comatose state when aroused, demonstrating also lack of control of his bladder, and being incontinent of urine, all these things indicate again, that he was not cognitively able to appreciate what the officer was saying.
N.T. at 26–27.

sion in *Monsay*. In *Monsay*, the licensee was arrested for driving under the influence after she was involved in an accident with a paramedic vehicle and was unable to perform several field sobriety tests. The arresting officer requested that Monsay submit to a blood test, she refused, and her license was suspended.

Monsay's appeal was sustained because the trial court found that she had sustained her burden of proving that she was unable to make a knowing and conscious refusal to submit to testing. At the hearing, Monsay admitted that she had consumed three glasses of wine in a three-hour period prior to the accident. Monsay also testified that, like Plotts, she was unable to remember the officer's request for testing or his warning; that she was under psychiatric care for what was described as a borderline personality disorder, which causes her to become panicky and anxious; that she was taking anti-depressant prescription drugs; and that she had taken the drugs in their prescribed dosage prior to the accident. Monsay's expert testified that one should not mix alcohol with these medications because it can make one drowsy. *Id.* at 165, 596 A.2d at 1270.

On appeal, DOT contended that Monsay had failed to sustain her burden of proving that she was incapable of making a knowing and conscious refusal. This Court reversed the trial court, finding Monsay's expert equivocated by stating that the licensee's voluntary consumption of alcohol could have been a contributing factor to her alleged inability to make a knowing and conscious refusal to submit to chemical testing. We held that "[s]ince the evidence established that Monsay's alleged inability to make a knowing and conscious refusal was due in part to her voluntary consumption of alcohol, Monsay's defense must ... fail." *Id.* at 167, 596 A.2d at 1271.

In this case, the common pleas court credited Dr. Boxer's testimony in full and incorporated the testimony, as discussed above, in its opinion. We determine that the common pleas court erred in sustaining Plotts's appeal because Dr. Boxer's opinion does not constitute competent evidence upon which to

base the conclusion that Plotts sustained his burden of proving that his inability to make a knowing and conscious refusal of the test was not related in part to his voluntary consumption of alcohol. Moreover, reviewing Dr. Boxer's testimony in full dictates the opposite, as it shows that Plotts's alleged incapacity was due to his voluntary consumption of alcohol in conjunction with a prescription drug.

Therefore, the common pleas court erred as a matter of law in sustaining Plotts's appeal. Accordingly, the decision of the Court of Common Pleas of Montgomery County in the above-captioned matter is reversed, and the Department's suspension is reinstated.

### ORDER

**AND NOW,** this 30th day of May, 1995, the order of the Court of Common Pleas of Montgomery County sustaining Mark J. Plotts's appeal of the driver's license suspension imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing in the above-captioned matter is reversed.

KELLEY, J., dissents and files opinion, in which DOYLE and FRIEDMAN, JJ., joined.

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that the common pleas court's order which sustained the appeal of Plotts and rescinded the Department's one-year suspension of his driver's license for failure to submit to chemical testing pursuant to section 1547(b)(1) of the Code [1] should be affirmed. Contrary to the conclusion reached by the majority, I believe that the outcome of this case is controlled by *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994) and *Department of Transportation, Bureau of Driver Licensing v. Zeltins*, 150 Pa.Commonwealth Ct. 44, 614 A.2d 349 (1992).

Whether a licensee has satisfied his burden of showing incapacity to make a knowing and conscious refusal to submit to a chemical

---

1. 75 Pa.C.S. § 1547(b)(1).

test is a factual determination to be made by the trial court. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). As has been stated by the majority, questions of credibility and conflicts in the evidence are for the trial court to resolve. *Ingram.* If there is sufficient evidence in the record to support the trial court's findings, then proper deference must be paid to the trial court as fact finder and its decision must be affirmed. *Id.* Moreover, with respect to incapacity, this court has held that, where a motorist does not knowingly exceed the recommended dosage of his prescription medicine, incapacity which results from the taking of such medicine can be a defense to a refusal to take a chemical test. *Zeltins.*

In this case, I believe that the common pleas court's determination that Plotts had met his burden of establishing that he was not capable of making a knowing and conscious refusal to take the chemical test was supported by competent evidence of record. The common pleas court based its determination on the testimony of Dr. Arthur Boxer, a psychiatrist, who opined concerning the effect of Plotts's medication on his behavior.

Dr. Boxer testified that Plotts was being treated with Xanax for a panic disorder. Reproduced Record (R.) at 26a. He stated that the combination of what Plotts had had to drink with the Xanax put Plotts in a *comatose* condition when he pulled into the church parking lot. R. at 27a–28a. Dr. Boxer testified that Plotts's thinking processes were terribly distorted as a result of his vomiting and everything else that had occurred on the evening in question. R. at 31a. In his professional opinion, Dr. Boxer stated that Plotts was unable to comprehend what Officer Nealy was saying to him. R. at 32a. Dr. Boxer opined, with a reasonable degree of medical certainty, that Plotts was cognitively disabled from the events that had occurred and that he was unable to give a reasoned refusal and in a reasoned way decline the offer for the blood alcohol level testing. R. at 33a. Moreover, there was no evidence presented that Plotts had exceeded the recommended dosage of Xanax.

The trial court found Dr. Boxer's testimony credible and relied upon it as the basis for its determination. I believe that the trial court's finding that Plotts was incapable of making a knowing and conscious refusal to take a chemical test has a sufficient factual basis in the record and is supported by competent testimony.

Accordingly, the common pleas court's order should be affirmed.

DOYLE and FRIEDMAN, JJ., join this dissenting opinion.