Order reversed. Case remanded. Jurisdiction relinquished.

BECK and POPOVICH, JJ., concur in the result.

**Donald C. HOFFMAN, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 15, 1996.

Decided Dec. 12, 1996.

Reargument Denied Feb. 7, 1997.

David S. Smith, Pittsburgh, for appellant.

Timothy P. Wile, Assistant Counsel In–Charge, and Harold H. Cramer, Assistant Chief Counsel, Harrisburg, for appellee.

Before COLINS, President Judge and PELLEGRINI, J., and LORD, Senior Judge.

PELLEGRINI, Judge.

Donald C. Hoffman (Licensee) appeals from the January 29, 1996 order of the Court of Common Pleas of Allegheny County (trial court) dismissing his statutory appeal from the one year suspension of his operating privileges.

By letter dated July 21, 1995, Licensee received a notice from the Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department), notifying him that his operating privileges had been suspended pursuant to Section 1547 of the Motor Vehicle Code, 75 Pa.C.S. § 1547, for one year due to his refusal to submit to chemical breath testing on June 24, 1995. Pursuant to Section 1550 of the Motor Vehicle Code, 75 Pa.C.S. § 1550, Licensee took a statutory appeal of that suspension to the trial court.

Before the trial court, Bethel Park Police Officer James Kirsch testified as to the circumstances surrounding Licensee's arrest. Kirsch testified that at approximately 1:00 a.m. on June 24, 1995, he observed Licensee's car backed next to a Texaco station with its headlights on. Due to the hour, Kirsch approached the car and Licensee, in the car with another passenger, rolled down the window. When Kirsch began to talk with Licensee, he noticed the smell of alcohol on his breath and that his eyes were glassy and bloodshot. Kirsch advised Licensee to find another operator to drive his car.

As Kirsch returned to his car, Licensee pulled out of the parking lot and Kirsch followed him. After he noticed Licensee's erratic and dangerous driving, Kirsch pulled him over and administered both pre-exit and field sobriety tests, which Kirsch testified

Licensee failed. Kirsch placed Licensee under arrest for driving while under the influence (DUI), in violation of Section 3731 of the Motor Vehicle Code, 75 Pa.C.S. § 3731, and transported him to the Bethel Park Police Station.

Sergeant Clarence Hornak also testified on behalf of the Department. Hornak testified that after Licensee had been brought into the station, he specifically requested that he submit to a chemical breathalyzer test. Hornak testified that he informed Licensee of the implied consent law, which he read to Licensee from the standard Bethel Park Police form. Hornak stated that Licensee refused to submit to the test. Both Hornak and Kirsch testified that Licensee never informed either of them that he had a medical condition that prevented him from complying with the test, nor that he had taken any prescription drugs to treat that medical condition.

Licensee then testified that at the time of his arrest for DUI, he was under the care of a physician, Dr. Jerry Rabinowitz, for the treatment of hypertension, for which he was treated with prescription medications. Licensee testified that he had been taking a combination of medications to treat his hypertension, Hydrochlorothiazide and Tenormin, since at least 1987 or 1988. Licensee described the side effects of those medications as intermittent and varying, including the inability to concentrate or comprehend certain situations, blurred vision, dryness of the mouth and interference with sexual function.

Licensee further testified that he remembered being placed under arrest for DUI, and that he remembered being read something from a piece of paper at the police station, but stated that he was unable to comprehend what he was read. Licensee testified that after he was read something, he was asked to sign it, and in response stated, "I can't sign that. I didn't understand it." Licensee testified that he informed the officer that he would like to consult with an attorney prior to making a decision in that regard, but that the officer did not answer him.

Licensee testified that he had started drinking on the night in question between 8:00 and 8:30 p.m., and that he had taken his prescription medications earlier that day. He stated that he had never been advised not to drink while taking those medications, that he had not read any warnings concerning the consumption of alcohol on those prescriptions, but that his doctor advised him to drink in moderation. Finally, Licensee admitted that he did not inform either Officer Kirsch or Sergeant Hornak that he had a medical condition or that he was taking prescription medications for the treatment of such.

Dr. Jerry Rabinowitz, Licensee's physician, was called to testify. The Department objected to its relevance on the basis that Licensee was prohibited from presenting such medical evidence unless it is proven that Licensee had informed one of the officers that he had a medical condition that would have prevented him from taking the chemical test. While the trial court did not permit Dr. Rabinowitz to testify, it did allow the doctor to submit a letter[1] explaining Licensee's condition and how it may have prevented him from taking the chemical breathalyzer test. In that letter, Dr. Rabinowitz explained that he has treated Licensee since 1986 for hypertension, for which he prescribes Hydrochlorothiazide and Tenormin. He noted that the side effects of Hy-

---

1. The trial court directed that Licensee submit a letter from Dr. Rabinowitz as to what his testimony would have been on the issue. (R.R. 34–35). In response to the trial court's direction that a letter be submitted, the Department requested that it be allowed the opportunity to cross-examine Dr. Rabinowitz as to the testimony set forth in such letter. While the record is not clear, both parties seem to indicate that the contents of that letter constitute Dr. Rabinowitz's direct testimony. No party objected to the letter being submitted, or to the process by which it was to be received. Though the trial court's opinion does not discuss how or if the letter was considered, apparently, the trial court considered the letter as evidence. If the trial court considered the letter as evidence, then the Licensee's argument that Dr. Rabinowitz was not permitted to testify is specious because the trial court took that letter, not subject to cross examination, and still found it to be legally insufficient to constitute an excuse for Licensee's refusal. If it considered it as a mere offer of proof, the trial court still found it to be legally insufficient.

drochlorothiazide can include drowsiness, restlessness and confusion, and that over the years, Licensee has had several documented episodes of such. He further opined that the inability to comprehend certain information when mentally challenged can also be a side effect of the prescribed medications. Dr. Rabinowitz concluded by opining that Licensee's exposure to the hot temperature on June 24, 1995, (Licensee had been outside cutting the grass, allegedly causing him to sweat profusely), in conjunction with the stress of the arrest, "could have made it difficult for him to comprehend the questions surrounding the form the officer gave him" irrespective of his consumption of alcohol.

By order dated January 29, 1996, the trial court dismissed Licensee's statutory appeal. In its opinion, the trial court found the testimony of the Bethel Park police officers to be credible, and rejected the testimony of Licensee regarding advisement of his rights as incredible. The trial court further found Licensee's claim of a medical preclusion to testing to be meritless, and that any condition suffered by him at the time of his arrest had no bearing on his ability to comprehend his rights or perform the required tests. This appeal follows.

On appeal,[2] the sole issue raised by Licensee is whether the trial court erred or abused its discretion by refusing to allow the testimony of Licensee's medical expert as to whether Licensee suffered from a medical condition which prevented him from making a knowing and conscious refusal to submit to chemical testing. Even though he did not inform any officer present during his arrest that he suffered from a medical condition for which he took prescription drugs with varying side effects, Licensee contends that the trial court erred by preventing him from presenting competent medical testimony to prove that he suffered from a medical condition which rendered him unable to make a knowing and conscious refusal to submit to chemical testing. Licensee contends that his alleged statement to the officers that he did not understand and wished to consult an attorney was indicative that a medical condition prevented him from making a knowing and conscious refusal.

■ While a licensee who fails to inform the administrator of a chemical test that he suffers from a medical condition that precludes him from taking or successfully completing a breathalyzer test is not permitted to present expert testimony as to that issue, *Hatalski v. Department of Transportation, Bureau of Driver Licensing,* 666 A.2d 386 (Pa.Cmwlth.1995); *Mueller v. Department of Transportation, Bureau of Driver Licensing,* 657 A.2d 90 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 542 Pa. 637, 665 A.2d 471 (1995), that is not the situation here. What is involved here is a licensee contending that a medical condition prevented him from making a knowing and conscious refusal to submit to chemical testing, e.g., sustaining a head injury in an accident. If Licensee's medical condition was one cognizable to serve as an excuse, then Dr. Rabinowitz should have been allowed to testify. The trial court apparently held that Dr. Rabinowitz's testimony did not present a legally cognizable condition that prevented him from being unable to make a knowing and conscious refusal to submit to chemical testing. We agree with that determination.

■ Assuming everything contained in Dr. Rabinowitz's letter to be true, it would not constitute a valid excuse for Licensee's refusal to submit to chemical testing. Where a licensee, absent an obvious medical condition, was precluded from making a knowing and conscious refusal of chemical testing allegedly due to that condition, he has the burden of proving by competent medical evidence that his condition prevented such knowing and conscious refusal. *Plotts v. Department of Transportation, Bureau of Driver Licensing,* 660 A.2d 133 (Pa.Cmwlth.1995).

■ We have held, however, that where the possible loss of mental or physical capacities was a foreseeable consequence when the driver undertook consumption, be it of alco-

**2.** Our scope of review of a driver's license suspension is limited to a determination of whether the trial court committed an error of law, an abuse of discretion, or whether the trial court's findings of fact are supported by substantial competent evidence. *Department of Transportation, Bureau of Driver Licensing v. Hall,* 666 A.2d 376 (Pa.Cmwlth.1995).

hol or prescription drugs, incapacity due to that consumption is not a valid excuse. *Department of Transportation, Bureau of Driver Licensing v. Lello*, 132 Pa.Cmwlth. 11, 571 A.2d 562 (Pa.Cmwlth.1990). In *Lello*, the licensee was arrested and charged with DUI after refusing to submit to chemical testing. The licensee admitted that he had taken twice the recommended dosage of Xanax, which had been prescribed to him. At the hearing, the licensee's medical expert testified that twice the dosage would have rendered licensee impaired, independent of the consumption of any alcohol, and that, therefore, the licensee was unable to make a knowing and conscious refusal of chemical testing.

 Though *Lello* dealt solely with a situation where a licensee took double the prescribed dosage of a prescription drug, and, in that case, we specifically refrained from deciding whether, had the licensee taken the prescribed dosage he would have been incapacitated, because, in the instant matter, Licensee admitted that the side effects of his medication at times rendered him confused and unable to comprehend certain situations, the voluntary consumption of even the prescribed amount, given its known and foreseeable side effects, was insufficient to excuse Licensee from making a knowing and conscious refusal of the chemical test. Licensee knew of the effect of that medication prior to its consumption, and irrespective of the effect of alcohol, continued to operate a motor vehicle, and because of his own self-induced confusion, he was prevented from making a knowing and conscious refusal. Thus, the side effects which those prescriptions had on him were not available as an excuse to refusing to submit to chemical testing.

Accepting everything Dr. Rabinowitz stated in his letter as true, that would not constitute a valid excuse for Licensee's refusal to submit to chemical testing. The voluntary consumption of those medications, the side effects of which were admittedly known by the Licensee, does not constitute a defense to Licensee's failure to submit to chemical testing. Accordingly, the decision of the trial court dismissing the Licensee's statutory appeal of his driver's license suspension is affirmed.

### ORDER

AND NOW, this 12th day of December, 1996, the order of the Court of Common Pleas of Allegheny County, dated January 29, 1996, No. S.A. 2306 of 1995, is affirmed.