Lisa G. GORDON

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 16, 1998.

Decided Feb. 27, 1998.

---

Timothy P. Wile, Asst. Counsel In-Charge, and Harold H. Cramer, Asst. Chief Counsel, for appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before McGINLEY and LEADBETTER, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Allegheny County that sustained Lisa G. Gordon's (Licensee) appeal from the suspension of her operating privilege by the Department pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1]  We affirm.

Fox Chapel Borough Police Officer Stephen J. Vashie testified at the *de novo* hearing before the trial court.  He stated that he arrived at the Gordon residence in response to Licensee's telephone complaint that her phone was being tapped.  The officer investigated the wiretapping complaint, discovering that a piece of cable TV wire had fallen.  The officer also testified that Licensee had called the police station on numerous other occasions, complaining that underground high intensity wires, Christmas lights and a lawn sprinkler control box were monitoring her.  When speaking to Licensee, Officer Vashie noticed an odor of alcohol emanating from her.  The officer further testified that Licensee asked him to transport her to Gateway Rehabilitation Center, but he refused.  Then Licensee entered a Jeep Grand Cherokee and drove to the end of the driveway.  When the officer attempted to stop Licensee from leaving the scene, she drove off.  Officer Vashie pursued Licensee and after managing to stop the vehicle, he arrested Licensee for driving under the influence.  The arrest was accompanied by a physical attack on the

---

1. Section 1547(b)(1) of the Code provides for the suspension of a driver's license for a period of one year upon refusal to submit to chemical testing to determine blood alcohol content.

officer; Licensee attempted to bite, scratch and kick the officer in the groin.

The officer transported Licensee to the police station and then she was taken by ambulance to Saint Francis Hospital. The officer requested involuntary commitment, because of her delusional and agitated state. He noted that Licensee did not believe he was a police officer even though he was in full uniform. At the hospital Licensee was strapped to a gurney and was yelling and screaming. When Officer Vashie first requested Licensee to submit to a blood test, she assented but requested a lawyer to be present. Then the officer read the implied consent warnings while Licensee continued to yell and scream. At this point Licensee refused the blood test and again requested a lawyer. Because Licensee was restrained she did not nor could she sign the forms presented to her by the officer. Licensee was then involuntarily committed for a mental health evaluation. Officer Vashie reported a refusal to submit to chemical testing.

By official notice the Department suspended Licensee's operating privilege for one year for refusing to consent to a blood test. Although Licensee did not testify in her own behalf,[2] the trial court sustained Licensee's appeal, concluding that the testimony of Officer Vashie recited above indicated that at the time the consent warnings were communicated to Licensee she was unable to make a knowing and conscious decision regarding the test. The court also noted that Licensee was restrained and was, therefore, physically unable to sign the proffered forms.

The Department now appeals to this Court.[3] It contends that the trial court's determination that Licensee had carried her burden of proof establishing that her refusal was not knowing and conscious due to mental illness was not supported by competent evidence because Licensee failed to present un-

equivocal medical evidence. Specifically, the Department argues that "Officer Vashie's testimony, standing alone, is insufficient, as a matter of law, to support a finding that [Licensee] suffered from a mental disorder and that her mental disorder precluded her from making a knowing and conscious decision regarding the blood test." (Department's brief, p. 10).

A motorist's operating privilege may be suspended as a result of a refusal to submit to a chemical test if the Department establishes: (1) that the motorist was arrested by an officer who had reasonable grounds to believe that the motorist was driving while intoxicated; (2)· that the motorist was requested to submit to a chemical test; (3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and (4) that he refused to submit to the test. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997). Once the Department has proven that the motorist failed to submit to the chemical test, the burden then shifts to the motorist to prove by competent medical evidence that he was not capable of making a knowing and conscious refusal. *Plotts v. Department of Transportation, Bureau of Driver Licensing*, 660 A.2d 133 (Pa.Cmwlth.1995). However, whether a motorist's refusal is knowing and conscious is a factual determination to be made by the trial court, which cannot be overturned on appeal if based on substantial evidence. *Id.*

Although Licensee contests the Department's assertion that it satisfied the burden of proof required to support its *prima facie* case, the Department's argument and the decision by the trial court centered on whether Licensee provided sufficient proof that she was unable to make a knowing and conscious refusal. Simply stated, the question is whether the record contains substantial com-

---

2. At the close of the Department's case, Licensee's attorney stated that Licensee and an expert witness were prepared to testify, but that based on Officer Vashie's testimony the Licensee carried her burden to prove that she did not make a conscious and knowing refusal to take the blood test. For that reason, Licensee's attorney requested that the case be dismissed.

3. In reviewing a driver's license suspension case, our scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether its findings of fact are supported by competent evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992).

petent evidence to support the trial court's finding of fact that Licensee's refusal was not knowing and conscious.

Citing *McQuaide v. Department of Transportation, Bureau of Driver Licensing*, 166 Pa.Cmwlth. 683, 647 A.2d 299 (1994), and *Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa.Cmwlth. 49, 500 A.2d 214 (1985), the Department recognizes that a licensee maybe excused from producing competent medical evidence if the licensee's injuries are serious and the debilitating effects are obvious. However, the Department contends that even Licensee's attorney recognized that under the circumstances here expert testimony was required,[4] that she failed to produce this evidence, and that this failure precludes her, as a matter of law, from sustaining her burden. We disagree and rely on the reasoning in *Day*, wherein the court noted that many factors are to be considered in determining whether a driver's refusal is knowing and conscious despite the lack of medical evidence. The *Day* court indicated one of the most important factors "is the driver's mental and physical state at the time." *Id.*, 500 A.2d at 214. The court then stated:

> The trial judge determines the credibility of the witnesses and the weight of their testimony. Taking into consideration the appellee's physical condition, and all the attendant circumstances, the evidence was substantial enough to support the trial judge's finding that the refusal was not conscious and knowing, even absent medical testimony to form a nexus between the injuries sustained and the refusal to take the test.

*Id.*, 500 A.2d at 215.

Here, the trial judge took into account all the circumstances as testified to by Officer Vashie and determined that Licensee was unable to make a knowing and conscious decision. Our review of the record reveals that substantial evidence supports this finding. Officer Vashie testified that he was aware of past delusional episodes, was called to check out another wiretapping, was required to apprehend Licensee after she took off in a vehicle, and had to subdue Licensee at the time of arrest. Most telling was the officer's testimony concerning his decision to request the involuntary commitment. If the officer believed that Licensee's behavior was the result of the consumption of alcohol, she could have been incarcerated, obviating the need for the commitment.

We conclude that substantial competent evidence supports the trial court's determination that Licensee failed to make a knowing and conscious refusal even without presenting medical testimony. Accordingly, we affirm the trial court's order.

### ORDER

NOW, February 27, 1998, the order of the Court of Common Pleas of Allegheny County, at No. S.A. 0295, dated May 3, 1996, is affirmed.

LEADBETTER, J., dissents.

---

4. During the Department's examination of Officer Vashie, the officer was asked for his opinion whether Licensee understood the warnings provided. Licensee's attorney objected to the question and the trial court sustained the objection, as follows:

> Q Officer, let me ask you: Despite the fact that she was strapped in the bed for the 302 commitment, do you have an opinion as to whether or not she understood the warnings and requests that you had given her?
> MR. BOAS: Your honor, I'm going to object. I think that it would take expert testimony,

given the fact that the officer's indications are that she was delusional, took her to a mental hospital, she was committed and strapped down.
> THE COURT: Sustained.
> MR. STEVENSON: Judge, if I may then just ask the officer's lay opinion as if [Licensee] appeared to understand what he was reading to her rather than she understood?
> MR. BOAS: Well, I think the same objection would apply, Your Honor.

(Transcript of hearing, p. 12).