**Dennis Charles DAILEY**

v.

**COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 4, 1998.

Decided Jan. 5, 1999.

Marc A. Werlinsky and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

James Asher Lynch, III, Havertown, for appellee.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

The Department of Transportation, Bureau of Driver Licensing (Bureau) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) which sustained the statutory appeal of Dennis Charles Dailey (Dailey). We reverse.

The facts of this case are fairly straightforward. Marc Reider, an officer of the Tredyffrin Township Police Department, was on duty on May 3, 1997. He received a radio report indicating that in a specified area, a white male was operating a vehicle with a right front flat tire. As the officer approached the area where the vehicle was, he observed Dailey operating a Jeep Wrangler. Dailey made a right turn in front of the officer's cruiser, crossing partially into the other lane of traffic. Dailey pulled his vehicle to the side of the road and exited it, walking to the rear of the Jeep. Although it was raining, Dailey was not wearing shoes. Officer Reider detected the odor of alcohol upon approaching Dailey. The officer observed that Dailey's face appeared flush and his eyes watery and bloodshot.

Officer Reider asked for identification whereupon Dailey reentered his Jeep and retrieved his wallet and driver's license. Upon exiting the Jeep, Dailey was very unsteady on his feet. Officer Reider administered field sobriety tests which Dailey failed. Officer Reider arrested Dailey. While securing Dailey's Jeep, the officer observed a five-liter container of wine.

Officer Reider took Dailey to a hospital where the officer read to Dailey the implied consent law and requested that Dailey submit to a blood test. When asked to sign, Dailey replied that he would not do so without an attorney. Dailey also informed the officer that he understood the warnings of the implied consent law which the officer read to him. Dailey was then taken to the police station and again advised of the implied consent law. Dailey again refused to submit to chemical testing without consulting an attorney.

By official notice dated June 5, 1997, the Bureau notified Dailey of his license suspension as a result of his refusal of chemical testing on May 3, 1997. Dailey filed a statutory appeal to the trial court.

At the de novo hearing conducted by the trial court, Dailey presented the testimony of a psychiatrist. The psychiatrist testified that she first saw Dailey on May 28, 1997, some weeks after the May 3 driving incident. The psychiatrist diagnosed Dailey as suffering from bipolar disorder of a mixed type, formerly generically known as manic-depression. The psychiatrist opined that Dailey suffered from this disorder at the time of the May 3rd incident. The Bureau presented the testimony of officer Reider. Dailey did not himself testify however, neither did he challenge the accuracy of officer Reider's account

**774**

of the May 3rd events. *See* Reproduced Record (R.R.) at p. 51a.[1]

At the conclusion of the hearing, the trial court sustained Dailey's appeal, finding that the psychiatrist's testimony established that Dailey's refusal of the chemical testing was not a knowing and conscious refusal because his judgment was impaired by the bipolar disorder. It is from this order that Bureau appeals.

■ Appellate review over a license suspension case is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court committed a manifest abuse of discretion. *Gombar v. Department of Transportation, Bureau of Driver Licensing,* 678 A.2d 843 (Pa.Cmwlth.1996).

On appeal the Bureau raises the following issue: Did Dailey fail to prove that he was incapable of making a knowing and conscious refusal where his psychiatric expert did not eliminate Dailey's alcohol consumption as a factor in his refusal?

■ In order to warrant a license suspension, the burden is upon the Bureau to prove that: 1) the licensee was arrested for driving under the influence of alcohol, 2) was requested to submit to chemical testing, 3) the licensee refused to do so and 4) the licensee was warned that a refusal would result in the suspension of his operating privilege. *Department of Transportation, Bureau of Driver Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997). Once the Bureau meets its burden, then the burden shifts to the licensee to prove that he was physically incapable of making a knowing and conscious refusal. *Id.* Where, as here, there is no obvious physical inability to do so, a licensee must prove that he was incapable of making a knowing and conscious refusal through

competent and unequivocal medical testimony. *Jacobs v. Department of Transportation, Bureau of Driver Licensing,* 695 A.2d 956 (Pa.Cmwlth.1997), *allocatur denied,* 549 Pa. 705, 700 A.2d 443 (1997). In proving that a licensee was incapable of making a knowing and conscious refusal, he cannot rely upon the fact of his level of intoxication as being the cause of his inability to do so. *See, Department of Transportation, Bureau of Driver Licensing v. Monsay,* 142 Pa.Cmwlth. 163, 596 A.2d 1269 (Pa.Cmwlth.1991); *Appeal of Cravener,* 135 Pa.Cmwlth. 480, 580 A.2d 1196 (Pa.Cmwlth.1990). Indeed, part of the licensee's burden in these types of cases is to establish that his alcohol ingestion played no part in rendering him incapable of making a knowing and conscious refusal. *DiGiovanni v. Department of Transportation, Bureau of Driver Licensing,* 717 A.2d 1125 (Pa.Cmwlth. 1998); *Gombar,* 678 A.2d at 847 ("[I]f a motorist's inability to make a knowing and conscious refusal of testing is caused in whole or in part by the consumption of alcohol, the motorist's affirmative defense fails.")

■ Here, the Bureau met its burden of proving the above four requirements pursuant to *Boucher.* The Bureau argues that Dailey did not meet his burden to prove that he was incapable of making a conscious and knowing refusal based solely upon his bipolar disorder. We agree.

■ Initially, we note that the determination of whether a licensee's refusal was knowing and conscious is a question of fact. *Plotts v. Department of Transportation, Bureau of Driver Licensing,* 660 A.2d 133 (Pa. Cmwlth.1995). However, whether there is substantial competent evidence to support the trial court's factual determination in this regard is a question of law reviewable by this court. *Id.*

---

1. At the conclusion of the testimony of Dailey's medical expert, the Court asked Mr. Lynch, Dailey's attorney if he had any further witnesses to present. The following exchange took place between the Court and Mr. Lynch.

> THE COURT: Anything further, Mr. Lynch?
> MR. LYNCH: Your Honor, I don't want to be repetitious, but I intended to call the defendant. But if you feel—

> THE COURT: He'll basically be corroborating what the police officer [Reider] said. I don't think he denies doing anything that he did that evening.
> MR. LYNCH: No.
> THE COURT: That's what I understood it would be.
> R.R. at 50a–51a.

Under cross-examination, the following exchange took place between the psychiatrist and the attorney for the Bureau:

Q. .... I'm just wondering, could you render an opinion as to what effect that [i.e., Dailey's ingestion of alcohol] may have had on his [Dailey's] ability to comprehend and understand the procedures on that evening?

A. The ability of alcohol and other substances to affect your comprehension and judgment is indistinguishable from the symptoms that have such an affect from bipolar disorder.

. . . .

Q. You would also agree it [alcohol consumption] can cause impairment in addition to, you know, the bipolar disorder, correct.

A. I would agree alcohol can cause impairment.

Q. Okay. And are you able to state here today with a reasonable degree of medical certainty [whether] Mr. Dailey's confusion, disorientation at the time of the police procedure was caused solely by his condition and not by the ingestion of alcohol?

A. It's difficult, the way you asked the question, because the ingestion of alcohol is a symptom of the disorder. So, it's an artificial distinction to try to separate –

Q. You have no idea how much he ingested on that evening?

A. I have no idea.

Q. Would that make a difference?

A. How much alcohol he ingested?

Q. Yes. It wouldn't take away the contradiction [sic, presumably should be "contra-indication"] of bipolar disorder. So if I were to have a couple of drinks as opposed to nine or ten drinks, the contradiction [contra-indication] would be the same in terms of the effect?

A. No, that's not what I said. What I'm saying is that alcohol, itself, worsens the symptoms of bipolar disorder, whether it's two drinks or ten drinks. An[d] **I can't artificially say that alcohol can be separated from bipolar disorder,** because alcohol consumption is a symptom of bipolar disorder.

R.R. 44a–46a (emphasis added). This testimony essentially establishes the psychiatrist's opinion that she could not separate out the effects of the alcohol from the bipolar disorder. Moreover, the trial court recognized that this was the psychiatrist's position. In summarizing the evidence and giving the reasons for its decision, the trial court stated that

[b]oth of them [the bipolar disorder and the ingestion of alcohol by Dailey] intertwined to the extent that, as she [the psychiatrist] testified, I believe it was under direct examination, that it would be extremely difficult to take one from the other; that any ingestion of alcohol would exacerbate the bipolar disorder, and that the bipolar disorder, itself, would exacerbate the alcohol consumption.

So we have a hand-in-hand type of situation. And it's kind of like circular reasoning. If you don't have bi-polar you wouldn't drink. If you didn't drink, you wouldn't have bipolar, and so forth; where it seems to the Court, at, least, that both of these are linked part and parcel to each other. **I can't separate them, I don't think the doctor can. And I think that where the alcohol consumption is so closely aligned to the psychiatric or physical disorder, that you really can't separate one from the other.**

R.R. at pp. 57a–68a (emphasis added). Thus, it is clear that there was not substantial evidence to establish that the alcohol consumption by Dailey did not play a part in rendering him incapable of making a knowing and conscious refusal, as was his burden. *DiGiovanni, Gombar.* Accordingly, as Dailey failed to sustain his burden of proof, the order of the trial court is reversed.

### ORDER

NOW, January 5, 1999, the order of the Court of Common Pleas of Montgomery County, Civil Division, Docketed at No. 97–12567, and filed November 24, 1997, is hereby reversed and the license suspension ordered by the Department of Transportation is hereby reinstated.